HOWSAM, INDIVIDUALLY AND AS TRUSTEE FOR THE E. RICHARD HOWSAM, JR., IRREVOCABLE LIFE INSURANCE TRUST DATED MAY 14, 1982 *v.* DEAN WITTER REYNOLDS, INC.

No. 01–800.   Argued October 9, 2002—Decided December 10, 2002

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, KENNEDY, SOUTER, and GINSBURG, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment, *post*, p. 87. O'CONNOR, J., took no part in the consideration or decision of the case.

*Alan C. Friedberg* argued the cause and filed briefs for petitioner.

*Matthew D. Roberts* argued the cause for the Securities and Exchange Commission as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Deputy Solicitor General Kneedler, Meyer Eisenberg, Jacob H. Stillman,* and *Mark Pennington.*

*Kenneth W. Starr* argued the cause for respondent. With him on the brief were *Steven G. Bradbury, Daryl Joseffer,*

*Ashley C. Parrish, Donald G. Kempf, Jr.,* and *Bradford D. Kaufman.\**

JUSTICE BREYER delivered the opinion of the Court.

This case focuses upon an arbitration rule of the National Association of Securities Dealers (NASD). The rule states that no dispute "shall be eligible for submission to arbitration . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." NASD Code of Arbitration Procedure § 10304 (1984) (NASD Code or Code). We must decide whether a court or an NASD arbitrator should apply the rule to the underlying controversy. We conclude that the matter is for the arbitrator.

I

The underlying controversy arises out of investment advice that Dean Witter Reynolds, Inc. (Dean Witter), provided its client, Karen Howsam, when, some time between 1986 and 1994, it recommended that she buy and hold interests in four limited partnerships. Howsam says that Dean Witter misrepresented the virtues of the partnerships. The resulting controversy falls within their standard Client Service Agreement's arbitration clause, which provides:

> "[A]ll controversies . . . concerning or arising from . . . any account . . . , any transaction . . . , or . . . the construction, performance or breach of . . . any . . . agreement between us . . . shall be determined by arbitration before any self-regulatory organization or exchange of which Dean Witter is a member." App. 6–7.

---

*Briefs of *amici curiae* urging affirmance were filed for the Competitive Enterprise Institute by *C. Boyden Gray* and *James V. DeLong;* and for the Securities Industry Association by *Douglas R. Cox* and *Stuart J. Kaswell.*

*F. Paul Bland, Jr., Deborah M. Zuckerman,* and *Michael R. Schuster* filed a brief for Trial Lawyers for Public Justice et al. as *amici curiae.*

The agreement also provides that Howsam can select the arbitration forum. And Howsam chose arbitration before the NASD.

To obtain NASD arbitration, Howsam signed the NASD's Uniform Submission Agreement. That agreement specified that the "present matter in controversy" was submitted for arbitration "in accordance with" the NASD's "Code of Arbitration Procedure." *Id.*, at 24. And that Code contains the provision at issue here, a provision stating that no dispute "shall be eligible for submission . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." NASD Code § 10304.

After the Uniform Submission Agreement was executed, Dean Witter filed this lawsuit in Federal District Court. It asked the court to declare that the dispute was "ineligible for arbitration" because it was more than six years old. App. 45. And it sought an injunction that would prohibit Howsam from proceeding in arbitration. The District Court dismissed the action on the ground that the NASD arbitrator, not the court, should interpret and apply the NASD rule. The Court of Appeals for the Tenth Circuit, however, reversed. 261 F. 3d 956 (2001). In its view, application of the NASD rule presented a question of the underlying dispute's "arbitrability"; and the presumption is that a court, not an arbitrator, will ordinarily decide an "arbitrability" question. See, *e. g.*, *First Options of Chicago, Inc.* v. *Kaplan*, 514 U. S. 938 (1995).

The Courts of Appeals have reached different conclusions about whether a court or an arbitrator primarily should interpret and apply this particular NASD rule. Compare, *e. g.*, 261 F. 3d 956 (CA10 2001) (case below) (holding that the question is for the court); *J. E. Liss & Co.* v. *Levin*, 201 F. 3d 848, 851 (CA7 2000) (same), with *PaineWebber Inc.* v. *Elahi*, 87 F. 3d 589 (CA1 1996) (holding that NASD § 15, currently § 10304, is presumptively for the arbitrator); *Smith Barney Shearson, Inc.* v. *Boone*, 47 F. 3d 750 (CA5 1995) (same). We

granted Howsam's petition for certiorari to resolve this dis-
agreement. And we now hold that the matter is for the
arbitrator.

## II

This Court has determined that "arbitration is a matter of
contract and a party cannot be required to submit to arbitra-
tion any dispute which he has not agreed so to submit."
*Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U. S. 574, 582
(1960); see also *First Options, supra,* at 942–943. Although
the Court has also long recognized and enforced a "liberal
federal policy favoring arbitration agreements," *Moses H.
Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S.
1, 24–25 (1983), it has made clear that there is an exception
to this policy: The question whether the parties have submit-
ted a particular dispute to arbitration, *i. e.*, the *"question of
arbitrability,"* is "an issue for judicial determination [u]nless
the parties clearly and unmistakably provide otherwise."
*AT&T Technologies, Inc.* v. *Communications Workers*, 475
U. S. 643, 649 (1986) (emphasis added); *First Options, supra,*
at 944. We must decide here whether application of the
NASD time limit provision falls into the scope of this last-
mentioned interpretive rule.

Linguistically speaking, one might call any potentially dis-
positive gateway question a "question of arbitrability," for
its answer will determine whether the underlying contro-
versy will proceed to arbitration on the merits. The Court's
case law, however, makes clear that, for purposes of applying
the interpretive rule, the phrase "question of arbitrability"
has a far more limited scope. See 514 U. S., at 942. The
Court has found the phrase applicable in the kind of narrow
circumstance where contracting parties would likely have
expected a court to have decided the gateway matter, where
they are not likely to have thought that they had agreed that
an arbitrator would do so, and, consequently, where refer-
ence of the gateway dispute to the court avoids the risk of

forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a "question of arbitrability" for a court to decide. See *id.*, at 943–946 (holding that a court should decide whether the arbitration contract bound parties who did not sign the agreement); *John Wiley & Sons, Inc.* v. *Livingston,* 376 U. S. 543, 546–547 (1964) (holding that a court should decide whether an arbitration agreement survived a corporate merger and bound the resulting corporation). Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, *e. g., AT&T Technologies, supra,* at 651–652 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson* v. *Sinclair Refining Co.,* 370 U. S. 238, 241–243 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

At the same time the Court has found the phrase "question of arbitrability" *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter. Thus " 'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively *not* for the judge, but for an arbitrator, to decide. *John Wiley, supra,* at 557 (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration). So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital, supra,* at 24–25. Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorpo-

rate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U. L. A. 12–13 (Supp. 2002). And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i. e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.,* § 6, comment 2, 7 U. L. A., at 13 (emphasis added).

Following this precedent, we find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be "questions of arbitrability." *E. g., Moses H. Cone Memorial Hospital, supra,* at 24–25 (referring to "waiver, delay, or a like defense"). Such a dispute seems an "aspec[t] of the [controversy] which called the grievance procedures into play." *John Wiley, supra,* at 559.

Moreover, the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it. In the absence of any statement to the contrary in the arbitration agreement, it is reasonable to infer that the parties intended the agreement to reflect that understanding. Cf. *First Options,* 514 U. S., at 944–945. And for the law to assume an expectation that aligns (1) decisionmaker with (2) comparative expertise will help better to secure a fair and expeditious resolution of the underlying controversy—a goal of arbitration systems and judicial systems alike.

We consequently conclude that the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called "questions of arbi-

trability." And the strong pro-court presumption as to the parties' likely intent does not apply.

## III

Dean Witter argues that, in any event, *i. e.*, even without an antiarbitration presumption, we should interpret the contracts between the parties here as calling for judicial determination of the time limit matter. Howsam's execution of a Uniform Submission Agreement with the NASD in 1997 effectively incorporated the NASD Code into the parties' agreement. Dean Witter notes the Code's time limit rule uses the word "eligible." That word, in Dean Witter's view, indicates the parties' intent for the time limit rule to be resolved by the court prior to arbitration.

We do not see how that is so. For the reasons stated in Part II, *supra*, parties to an arbitration contract would normally expect a forum-based decisionmaker to decide forum-specific procedural gateway matters. And any temptation here to place special antiarbitration weight on the appearance of the word "eligible" in the NASD Code rule is counterbalanced by a different NASD rule; that rule states that "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code." NASD Code § 10324.

Consequently, without the help of a special arbitration-disfavoring presumption, we cannot conclude that the parties intended to have a court, rather than an arbitrator, interpret and apply the NASD time limit rule. And as we held in Part II, *supra*, that presumption does not apply.

## IV

For these reasons, the judgment of the Tenth Circuit is

*Reversed.*

JUSTICE O'CONNOR took no part in the consideration or decision of this case.

JUSTICE THOMAS, concurring in the judgment.

As our precedents make clear and as the Court notes, arbitration is a matter of contract. *Ante*, at 83. In *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468 (1989), we held that under the Federal Arbitration Act courts must enforce private agreements to arbitrate just as they would ordinary contracts: in accordance with their terms. Under *Volt*, when an arbitration agreement contains a choice-of-law provision, that provision must be honored, and a court interpreting the agreement must follow the law of the jurisdiction selected by the parties. See *id.*, at 478–479 (enforcing a choice-of-law provision that incorporated a state procedural rule concerning arbitration proceedings); see also *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 67 (1995) (THOMAS, J., dissenting) (concluding that the choice-of-law provision in question was indistinguishable from the one in *Volt* and, thus, should have been given effect). A straightforward application of these principles easily resolves the question presented in this case.

The agreement now before us provides that it "shall be construed and enforced in accordance with the laws of the State of New York." App. 6. Interpreting two agreements containing provisions virtually identical to the ones in dispute here, the New York Court of Appeals held that issues implicating § 15 (now § 10304) of the National Association of Securities Dealers Code of Arbitration Procedure are for arbitrators to decide. See *Smith Barney Shearson Inc.* v. *Sacharow*, 91 N. Y. 2d 39, 689 N. E. 2d 884 (1997). Because the parties agreed to be bound by New York law and because *Volt* requires us to enforce their agreement, I would permit arbitrators to resolve the § 10304 issues that have arisen in this case, just as New York case law provides. The Court follows a different route to reach the same conclusion; accordingly, I concur only in the judgment.