**CIGNA FINANCIAL SERVICES, INC., Plaintiff,**

v.

**Daniel R. GREEN, Defendant.**

**No. CIV.A. 02–7970.**

United States District Court, E.D. Pennsylvania.

Jan. 17, 2003.

**240**

J. Clayton Underclofler, Saul, Ewing, Remick & Saul, Philadelphia, PA, for Plaintiffs.

Daniel R. Green, Media, PA, pro se.

### FINDING OF FACT AND CONCLUSIONS OF LAW

KATZ, Senior District Judge.

Plaintiff Cigna Financial Services, Inc. seeks to enjoin defendant Daniel Green, pro se, from pursuing an arbitration before the National Association of Securities Dealers, Inc. ("NASD"). Pursuant to Federal Rule of Civil Procedure 65(a)(2), this court ordered the consolidation of the trial on the merits of the action with the scheduled preliminary injunction hearing. Following a bench trial, and upon consideration of the submissions of the parties, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Cigna Financial Services is a corporation organized under the laws of Delaware with its principal place of business at One Commercial Plaza, 280 Trunball Street, Hartford, Connecticut. Cigna Financial Services was incorporated on December 29, 1995.

2. CIGNA Corporation is the parent company of all Cigna companies.

3. Cigna Financial Services is a CIGNA entity that offers discount brokerages services for investors and planning help for individuals participating in a retirement plan that are now retiring or leaving their jobs.

4. Cigna Retirement and Investment Services, Inc. ("Cigna R & I") is the marketing name for companies and products providing pension and retirement services.

5. CIGNA is a service mark, not an entity.

6. Connecticut General Life Insurance Company ("Connecticut General") is an insurance company that is an indirect subsidiary of CIGNA Corporation. Connecticut General is not a member of the NASD. Connecticut General does not provide brokerage services. Rather, Connecticut General is an insurance company that provides retirement and investment services.

7. Daniel Green is an adult individual and citizen of Pennsylvania who worked as a financial representative for John Hancock. Green was the agent of record for all business transactions between Wawa, Inc. and John Hancock.

8. In June 1995, Wawa issued a Request for Proposal ("RFP") to overhaul its employee retirement plan by

upgrading its 401K plan for its employees.

9. As a financial representative for John Hancock, Green was interesting in assembling a retirement plan to submit to Wawa.

10. Because John Hancock did not have a suitable 401K plan, Green obtained permission from his employer to submit a 401K plan from another company that provided retirement and investment management services for employers.

11. Green contacted employees of Connecticut General and claims to have spoken with John Kurtz, Dale Cunningham, Frederick Castellani, and Sandra Uzdavinis.

12. Green and another broker, Willis Corroon, independently developed nearly identical proposals and submitted them to Cigna R & I.

13. Cigna R & I submitted these proposals to Wawa, but Wawa ultimately rejected the proposals and chose another provider.

14. In the summer of 1995, Green received a copy of the Corroon proposal from Sandra Uzdivinis via facsimile. Following his receipt of the Corroon proposal, Green made no complaint regarding any deceptive practices contained in the proposal. Rather, Green met with Connecticut General employees in an attempt to become an employee of the company. However, he never received an offer of employment.

15. Beginning in the summer of 1997, Green repeatedly contacted officials at CIGNA Corporation and Connecticut General alleging that a fee in the Corroon proposal constituted a deceptive sales practice in violation of federal securities laws. Specifically, Green charged that Cigna R & I excluded him from the close of the deal because he refused to conceal a 20 basis point commission that accompanied the fund. Green alleges that Cigna R & I characterized the commission as an educational expense rather than as a commission.

16. On July 11, 1997, Green sent a letter to the CEO of CIGNA Corporation, Wilson H. Taylor, in which he stated that he was aware of deceptive sales practices within Cigna R & I which would "cost CIGNA and [its] shareholders hundreds of millions of dollars in fines and untold losses in business and stock value." In the letter, Green threatened to bring a class action against the parent corporation unless he were given a position as a consultant to resolve the illegal practice at Cigna R & I.

17. Green retained Lisa Haley, Esquire, on July 16, 1997 as counsel to bring a lawsuit against CIGNA Corporation for fraud and misrepresentation.

18. Attorneys for CIGNA Corporation met with Green and his attorney on August 12, 1997 to discuss this letter. Green reiterated his interest in working as a consultant to correct the allegedly illegal practices at Cigna R & I.

19. In November, 1997, another lawyer, Joseph Fiorvanti, threatened to market a Qui Tam action to the civil division of the United States Attorney's Office based on the lost tax revenue to the government inherent in the concealed commission of the pension programs. Fiorvanti also threatened to file claims against CIGNA Corporation for SEC violations, ERISA violations, federal RICO violations, and tortious interference with contract.

20. On November 21, 1997, counsel for CIGNA Corporation and Cigna R & I

informed Green that, after a full investigation, all his allegations were meritless.

21. On December 8, 1997, Green, through Haley, filed a lawsuit in Delaware County Court against CIGNA Corporation.

22. On January 13, 1998, Haley filed a petition in state court to withdraw as Green's attorney.

23. In May, 1998, Green voluntarily discontinued his state court action against CIGNA Corporation.

24. On September 7, 2001, Green, through his new attorney Debra Speyer, sent a Statement of Claim to the National Association of Security Dealers (NASD) naming CIGNA Corporation, Cigna Securities, Inc., and Cigna Financial Services as respondents.

25. In his Statement of Claim, Green again charged that Cigna Financial Services was liable for excluding him from its response to Wawa's Request for Proposal in 1995. This is the same allegation Green levied against CIGNA Corporation, a non-NASD member, in his Delaware County Lawsuit three years earlier.

26. Green sought compensatory damages of $30 million.

27. On October 12, 2001, Green along with Speyer and Green's former attorney Haley, met with John Murphy, Assistant General Counsel for CIGNA Corporation, and other attorneys working for CIGNA Corporation. Following this meeting, Speyer withdrew as Green's attorney.

28. Cigna Financial Services did not exist at the time the allegedly deceptive commission practices occurred since it was incorporated in December 1995.

29. Although Green contends that he had a relationship with Cigna R & I to provide pension brokerage services, this court finds credible the testimony of John Murphy that Green was never an employee of, nor did he have a contractual relationship with, Connecticut General, Cigna Financial Services, or any CIGNA entity.

30. Cigna Financial Services is a member of the NASD; however, there is no arbitration agreement between Cigna Financial Services and Green.

31. Green's only contact during the summer of 1995 was with Connecticut General employees.

*Conclusions of Law*

■ 32. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Howsam v. Dean Witter Reynolds, Inc.,* —— U.S. ——, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).[1]

---

1. Initially, the plaintiff raised two arguments in favor of enjoining Green's NASD arbitration. First, Cigna Financial Services argued that Green filed his Statement of Claim with the NASD after the statute of limitations had expired pursuant to NASD Code of Arbitration, Rule 10304. Second, the plaintiff claimed that there was no arbitration agreement between Green and Cigna Financial Services. While this action was pending, the Supreme Court decided *Howsam v. Dean Wit-*

*ter Reynolds, Inc.,* —— U.S. ——, 123 S.Ct. 588, 154 L.Ed.2d 491, 2002 WL 31746742 (U.S. Dec. 10, 2002) which held that an arbitrator, rather than a court, should decide whether a claim was submitted within the time period set forth in Rule 10304. Cigna Financial Services now relies on their second argument that a party should not be required to arbitrate a claim when there is no agreement to arbitrate between the parties.

33. Rule 10101 of the NASD Code of Arbitration Procedure ("NASD Code") provides as follows:

> This Code of Arbitration Procedure is prescribed and adopted pursuant to Article VII, Section 1(a)(iv) of the By–Laws of the Association for the arbitration of any dispute, claim or controversy *arising out of or in connection with the business of any member of the Association or arising out of the employment or termination of employment of any associated person(s) with any member,* with the exception of disputes involving the insurance business of any member which is also an insurance company.

NASD Code of Arbitration Procedures § 10101 (emphasis added).

34. Rule 10201 of the NASD Code sets forth the claims that are required to be arbitrated and provides as follows:

> "[a] dispute, claim or controversy eligible for submission under [Rule 10101] between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member."

NASD Code of Arbitration Procedures § 10201.

35. Article I, paragraph 1101(m) of the NASD by-laws defines "persons associated with a member" as "any natural person ... engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member whether or not any such person is registered or exempt from registration with the {NASD} pursuant to the NASD By-Laws." NASD By-Laws Art. I, ¶ 1101(m)

36. Green was never directly or indirectly controlled by the plaintiff. Therefore, Green cannot force Cigna Financial Services to arbitrate the matter alleged in his Statement of Claim.

37. The evidence also shows that Green's allegations in his Statement of Claim do not "arise out of" and are not "in connection with" the business of Cigna Financial Services, because the company did not exist in the summer of 1995.

38. While both Connecticut General and Cigna Financial Services are subsidiaries of CIGNA Corporation, Green only dealt with the employees of Connecticut General. Connecticut General is not a member of the NASD, and Green's claims against Connecticut General are not eligible for arbitration before the NASD.

39. Because there is no agreement to arbitrate between Green and Cigna Financial Services, and Green's allegations do not "arise out of" and are not "in connection with" the business of Cigna Financial Services, there is no jurisdictional basis for an NASD arbitration between these parties under the NASD Code.

40. Therefore, Cigna Financial Services is entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.,* that Green's claims are ineligible for arbitration. Furthermore, Green

is permanently enjoined from pursuing his NASD arbitration.

41. Plaintiff is not entitled to an award for attorneys' fees because the plaintiff has not shown that Green filed the arbitration claim maliciously.

## JUDGMENT

**AND NOW**, this 17th day of January, 2003, judgment is entered on the claims in **FAVOR** of the plaintiff, Cigna Financial Services, and AGAINST the defendant, Daniel R. Green.