**WINDWARD AGENCY, INC.**

v.

**COLOGNE LIFE REINSURANCE CO.**

No. Civ.A. 95–7830.

United States District Court,
E.D. Pennsylvania.

Dec. 4, 2003.

Paul B. Kerrigan, Reed Smith, Timothy C. Russell, Spector, Gadon & Rosen PC, Philadelphia, PA, for Plaintiff.

Michael J. Glasheen, McCarter & English, LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM

BARTLE, District Judge.

Before this court is the motion of defendant Cologne Life Reinsurance Company ("Cologne") to dismiss this action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

### I.

Plaintiff Windward Agency, Inc. ("Windward") first commenced an action against Cologne on November 15, 1994 when it filed a writ of summons in the Court of Common Pleas of Montgomery County, Pennsylvania. *See* Pa. R. Civ. P. 1007. This writ was never served. A year later, on November 15, 1995, Windward filed a complaint in the same state court alleging tortious interference with contractual relations, civil conspiracy, and breach of contract that purportedly took place in 1991. The claims allegedly arise out of the improper cancellation of a reinsurance agreement covering an insurance plan marketed by Windward. Plaintiff seeks in excess of $1 million in damages, plus interest. Cologne timely removed the action based on diversity of citizenship, and the case was thereafter assigned to my predecessor, the late Judge Joseph L. McGlynn, Jr.

On January 25, 1996 Cologne moved for summary judgment on all counts. On July 11, 1996 the court granted summary judgment on the tortious interference and civil conspiracy claims on the ground that they were barred by the statute of limitations. Cologne then moved for arbitration of Windward's claim under the Federal Arbitration Act, 9 U.S.C. § 2, *et seq.* The defendant cited an arbitration provision of a Reinsurance Agreement between Cologne and Gerber Life Insurance Company. On April 1, 1997, concluding that Windward was a third party beneficiary of the Reinsurance Agreement, the court ordered the contract claim to be arbitrated and stayed the action. Under the arbitration clause, each party was to select an arbitrator and the two arbitrators were to select a third arbitrator. Between April and June, 1997 each party chose an arbitrator as provided in the agreement, but the third arbitrator was never appointed.

On February 3, 1998 Cologne received notice that Windward's arbitrator had resigned due to a conflict. Windward did not then name a replacement or otherwise take any steps to advance the matter.

The court placed the action on its suspense docket on March 5, 1998. On February 25, 1999 the matter was reassigned to the undersigned following the untimely death of Judge McGlynn.

On August 24, 2001 this court directed a notice to counsel inquiring about the status of the case and advising counsel that if no response was received by September 7, 2001 the court may enter an Order dismissing the case for lack of prosecution. As a result of this letter, new counsel for plaintiff entered his appearance on November 20, 2001, and the court took no further action at that time.

This court's deputy clerk sent a second notice to counsel on August 12, 2003 inquiring about the status of the matter. Shortly after receipt of the notice, Windward's counsel notified counsel for Cologne that it had now designated a replacement for the arbitrator who had resigned and was ready to proceed. On October 6, 2003

Cologne filed its pending motion to dismiss for lack of prosecution.

## II.

Rule 41(b) provides:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b).

■ Our Court of Appeals in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir.1984), has characterized a dismissal of an action for failure to prosecute as a drastic sanction. Before taking this step, we are required at least to consider the following factors:

(1) the extent of the *party's* personal *responsibility;*

(2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a *history* of dilatoriness;

(4) whether the conduct of the party or the attorney was *willful* or in *bad faith;*

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and

(6) the *meritoriousness* of the claim or defense.

*Poulis,* 747 F.2d at 868 (emphasis in original). However, not all factors must be satisfied for dismissal to be warranted. *See Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir.1988).

■ We first consider Windward's personal responsibility. In this case the record is not clear whether responsibility lies with the first or second attorney for Windward, with Windward itself, or with some or all of them for the delay of more than six years since Judge McGlynn ordered the parties to arbitrate. On August 17, 2000 the court denied the motion of plaintiff's then counsel to withdraw his appearance. The court's Order noted that it had been advised that Windward had retained new counsel and that once new counsel had entered an appearance, prior counsel could automatically withdraw. Nonetheless, it was not until more than a year later, on November 20, 2001, and only after the court had sent counsel a notice of possible dismissal for lack of prosecution, that new counsel first appeared for plaintiff and the previous counsel withdrew. In this case, a corporate plaintiff is suing a corporate defendant in a commercial dispute involving a significant sum of money. Under these circumstances, plaintiff cannot insulate itself from any dilatory conduct on the part of its attorney or attorneys. Consequently, regardless of the details, the fault must ultimately rest with Windward.

We find that there has been prejudice to the defendant. The underlying events occurred in 1991, at least twelve years ago. While plaintiff filed a writ of summons in this matter in November, 1994, it did not have it served. The complaint was not filed until November 15, 1995, a year later. Arbitration was ordered by this court on April 1, 1997. Since that time, Cologne has been taken over by another company, and its two employees with the most knowledge about the matter have now retired. While we do not know specifically about the availability or condition of these two or other witnesses, we can reasonably infer that a delay of the present magnitude has inevitably caused memories to fade. The new counsel for Windward has also

observed that Windward's files in the matter "were incomplete and in substantial disarray" at the point in time when he entered his appearance. This too could work to the substantial disadvantage of Cologne if documents favorable to it or harmful to Windward are now missing. In sum, Windward's claim is now truly stale through no fault of Cologne.

The history of delay on the part of Windward is manifest. As noted above, the underlying events in this case took place over a decade ago, and the matter was to be arbitrated by an Order entered in April, 1997. After Windward's arbitrator resigned, it did not replace him until the summer of 2003, over five and one-half years after the vacancy occurred. While Windward's chronology is fuzzy on the point, it appears that the recent appointment was not made until after receipt of this court's August 12, 2003 notice to the parties. Significantly, Windward has offered no substantive excuse whatever for the prolonged dormancy of this matter. Windward merely argues that Cologne has partial responsibility for the delay because it did not take steps to accelerate the arbitration process. We find this argument to be without merit. The onus was on Windward, the party seeking damages against Cologne.

We turn to the question whether the attorney's conduct was willful or in bad faith. In this regard, we note that neither of plaintiff's counsel moved the matter to arbitration as contemplated by Judge McGlynn's April 1, 1997 Order. Nothing has been presented to us to justify or explain the extended delay. It was obviously the intention of the court that the parties and counsel act with reasonable speed. Windward and its counsel had the burden of diligently pursuing its claim if it was still interested in seeking damages against Cologne. Without a Windward arbitrator, everything was at a standstill.

We do not believe that alternative sanctions such as the imposition of fines and costs would be appropriate. The basic problem is the prejudice to defendant from the twelve years that have passed since the events in question took place and the more than six years since the action was stayed pending arbitration. Fines and costs cannot turn back the clock or restore blurred memories or missing files. Besides, plaintiff has had two different attorneys at various times during the pendency of this case. Trying to assess which, if either, has any responsibility or whether the blame rests in whole or in part with Windward itself would head us down an expensive and time consuming collateral path which would only result in further delay.

Finally, we come to the merits of the action. Realistically, we are not in a position to assess this factor except to comment that few, if any, corporate plaintiffs with a strong case for over $1 million in damages would sit on their hands as long as this plaintiff has done. Common sense dictates that Windward's action is likely to be of questionable merit.

Cologne has satisfied the *Poulis* factors for the dismissal of this action with prejudice for lack of prosecution.

### III.

Windward argues that even if the *Poulis* factors have been met, the issue of undue delay is a question for the arbitrators and not for the court. It points to Article IX of the Reinsurance Agreement which provides in relevant part:

> The arbitrators shall have the power to determine all procedural rules for the holding of the arbitration including, but not limited to inspecting documents, examination of witnesses and any other matter relating to the conduct of the arbitration.

The arbitrators shall interpret this Agreement as an honorable engagement and not merely as a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. . . .

 It is well established that arbitration is a matter of contract. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Only those issues that the parties have agreed to arbitrate may be submitted to an arbitrator for decision. *Id.* However, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

 The role of the court in the arbitration process is carefully circumscribed. The court at the outset is simply to decide whether a question of arbitrability exists and if it decides in the affirmative, all other issues are for the arbitrator absent fraud. *See Medtronic AVE Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44, 55 (3d Cir.2001). What is a "question of arbitrability" is not always clear. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), the Supreme Court observed that the term is not so broad as to include "any potentially dispositive gateway question" but has "a far more limited scope." *Id.* at 83, 123 S.Ct. 588 (citation omitted). There the Court held that the bar of the statute of limitations, even if a complete defense, is not "a question of arbitrability" but rather an issue for the arbitrator. The Court explained:

The Court has found the phrase [question of arbitrability] applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83–84, 123 S.Ct. 588.

Windward misconstrues the issue before us. Unlike *Howsam* and many other cases, we are not being asked to determine whether a demand for arbitration was untimely or whether the statute of limitations under the arbitration agreement bars any recovery. The question presented here is whether Windward, which is seeking damages against Cologne, complied with this court's Order of April 1, 1997 to proceed to arbitration in accordance with the terms of Article IX of the Reinsurance Agreement. Implicit in the Order was the requirement that the parties proceed with reasonable dispatch. As noted above, it was incumbent upon Windward to take the necessary steps to expedite the resolution of the matter. We are not dealing here with events beyond Windward's control such as slothful arbitrators or complex pre-arbitration proceedings. Nor has Cologne thrown up any impediments. Windward's appointed arbitrator resigned in February, 1998, and it did not replace him for over five and one-half years. It was only after this court sent a notice of possible dismissal on August 12, 2003 that Windward finally notified Cologne that it had named a substitute. Without an arbitrator designated by Windward, the arbitration could not go forward. It was not the job of Cologne, the defendant, to force the issue if Windward had no interest in doing so, and there was nothing in the arbitration provisions of the Reinsurance Agreement requiring Cologne to act under these circumstances. Fault lies solely with Windward.

We conclude we have authority to dismiss an action for lack of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure where a party has unduly delayed in proceeding to arbitration in violation of a court order. If it were otherwise, a plaintiff could disregard with impunity an order to arbitrate.

As far as we know, the issue before us is a matter of first impression in this circuit. However, at least two Courts of Appeals in other circuits have held, as do we, that it is for the court to decide if a party's inactivity in arbitrating a dispute constitutes grounds for dismissal of a stayed action for lack of prosecution under Rule 41(b). *Shields v. Shearson Loeb Rhoades, Inc.,* No. 92–1425, 1993 WL 3068 (7th Cir. Jan.7, 1993); *Morris v. Morgan Stanley & Co.,* 942 F.2d 648 (9th Cir.1991). We view this issue as one that the parties would expect the court to decide as a "gateway matter." *See Howsam,* 537 U.S. at 83–84, 123 S.Ct. 588.

## IV.

The action here was stayed pending arbitration by Order of this court dated April 1, 1997. We have inherent authority to take action when a party does not comply with a court Order such as this and to dismiss an action, consistent with *Poulis,* under Rule 41(b) for lack of prosecution. It is clear that Windward has not complied with the court's Order to prosecute the arbitration in a timely fashion. The only fair result is dismissal.

### *ORDER*

AND NOW, this day of December, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that this action is DISMISSED with prejudice for lack of prose-

cution pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.