**Neal SMITH, Plaintiff–Appellant,**

v.

**DEAN WITTER REYNOLDS, INC., now known as Morgan Stanley Dean Witter & Company, and Regald B. Smith, Defendants–Appellees.**

No. 02–6158.

United States Court of Appeals, Sixth Circuit.

June 23, 2004.

Jim G. Vanover, Vanover, Hall & Bartley, Pikeville, KY, Steven M. McCauley, Charles C. Mihalek, Lexington, KY, for Plaintiff–Appellant.

Anita M. Britton, Lindsey W. Ingram, III, Stoll, Keenon & Park, Lexington, KY, Jason M. Fedo, Bradford D. Kaufman, Greenberg Traurig, West Palm Beach, FL, Elliot H. Scherker, Brenda K. Supple, Greenberg & Traurig, Miami, FL, for Defendants–Appellees.

Regald B. Smith, Pikeville, KY, pro se.

BEFORE: MERRITT, DAUGHTREY, and GIBBONS, Circuit Judges.

PER CURIAM.

The plaintiff, Neal Smith, initiated this action for fraud in state court, and it was removed to federal court by the defendant, Dean Witter Reynolds, Inc., on the basis of diversity. Even though some of the fraudulent activities alleged by the plaintiff occurred as much as 10 years or more before suit was filed, he contends that his claims are nevertheless timely under the applicable state statute of limitations, which runs for three years from the date that the fraud is discovered. But, because the plaintiff had signed a customer agreement when he opened his Dean Witter account that required the arbitration of any disputes regarding his account, the defendant invoked New York Stock Exchange (NYSE) Rule 603 and argued that its six-year eligibility limitation made the action untimely. The district court agreed and, holding that arbitration was the plaintiff's exclusive remedy, entered summary judgment for the defendant. In doing so, the district court relied on our decision in *Osler v. Ware*, 114 F.3d 91 (6th Cir.1997), an opinion that has been effectively overruled by the Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Because the later decision prohibits a district court from determining the question of procedural arbitrability under factual circumstances that are virtually identical to those in this case, we find it necessary to reverse the judgment of the district court and remand the case with directions to submit the plaintiff's claims to arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Beginning in September 1987, plaintiff Neal Smith opened several investment accounts supervised by his brother, Regald Smith, who was originally a broker for Prudential–Bache Securities, but who later joined Dean Witter and eventually became one of Dean Witter's regional vice presidents. It is undisputed that Regald Smith stole approximately $330,000 in cash and securities from his brother's investment accounts at Dean Witter between 1987 and 1995, when Regald Smith left Dean Witter to join a new brokerage house, Stifel Nicolaus & Co.[1] At Stifel Nicolaus, Regald Smith bilked his brother and other customers of $5.5 million, which thefts came to light following investigations by the Securities and Exchange Commission and the U.S. Department of Justice in 2000. Within a year of learning about the thefts, Neal Smith filed suit against defendant Dean Witter and its agent, Regald Smith, in

---

1. Regald pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343 on October 10, 2000.

state court. Two weeks later, Dean Witter sent the plaintiff a letter indicating that under its customer agreement, the plaintiff had to resolve the dispute through arbitration and had five days to elect one of three arbitration forums.[2] The plaintiff responded through counsel that he was not yet in a position to acknowledge either the authenticity or the enforceability of the arbitration agreement, among other reasons due to the legibility of the faxed copy that he had been sent by Dean Witter. He therefore declined to make an election, pending receipt of "a higher quality copy of the subject agreement." As a result, Dean Witter sent Smith a letter informing him that because he had not made an election within five days as required by the customer agreement, the company, in accord with Clause 16 of the agreement, had selected the New York Stock Exchange (NYSE) as the forum for arbitration.

This choice was crucial. Only NYSE had a disqualifying eligibility period, as further described below. One of the other two choices had no time limit, and although the provisions of the third choice are somewhat unclear on this record, they apparently would not have barred arbitration of the claims presented here. So, despite the fact that Dean Witter concedes that its agent stole a substantial quantity of money and securities from accounts that it maintained for the plaintiff, the company deliberately chose a course of action that could potentially leave it with no liability for Smith's losses. In response, the plaintiff acknowledged that the claims were more than six years old and argued that because the dispute was no longer "eligible" for arbitration, the claims would have to be litigated. He therefore proceeded against Dean Witter in state court.

Following removal of the action to federal court, Dean Witter moved to dismiss the plaintiff's claims with prejudice on the ground that they were more than six years old when brought and, thus, not eligible for submission to arbitration under NYSE Rule 603, which provides:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence or event giving rise to the act or the dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

The district court granted Dean Witter's motion to enforce the arbitration agreement, granted Dean Witter summary judgement, and dismissed Smith's claims with prejudice. The court held that under the customer agreement, arbitration was Smith's exclusive remedy. It also found that arbitration was unavailable under NYSE Rule 603 and denied the plaintiff's subsequent alternative motion to compel arbitration.

---

**2.** Clause 16 of the Customer's Agreement contained the following arbitration clause:

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned [Plaintiff Neal Smith] may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

The plaintiff now appeals from the district court's judgment. The Securities and Exchange Commission (SEC) has filed an *amicus curiae* brief on behalf of the plaintiff urging this Court to hold that arbitration agreements should not be interpreted to deprive customers of rights that they have not agreed to give up.

### ANALYSIS

In dismissing the plaintiff's claims as time-barred under NYSE Rule 603, the district court relied on our analysis in *Osler v. Ware,* in which we had held that NYSE Rule 603 was a substantive eligibility requirement that bars claims from arbitration if not filed within six years of the occurrence or event giving rise to the claims. 114 F.3d at 92–93. The district court ruled that "the effect of [Rule 603] on the Plaintiff's claims should be decided by the court, rather than an arbitrator," citing *Roney and Co. v. Kassab,* 981 F.2d 894, 899 (6th Cir.1992). The court did so, however, without the benefit of the Supreme Court's subsequent decision in *Howsam,* which was announced three months after the plaintiff's claims in this case were dismissed. *See* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

The Supreme Court granted *certiorari* in *Howsam* in order to resolve a conflict among circuits as to whether an arbitrator or the court should interpret and apply the National Association of Securities Dealers (NASD)'s six-year eligibility rule, which is set out in § 10304 of the NASD Code of Arbitration Procedure. *See* 537 U.S. at 81–82. Because the Sixth Circuit has determined previously that "Rule 603 of the NYSE and [§ 10304] of the NASD Code are identical in both text and application," *Dean Witter Reynolds, Inc. v. McCoy,* 995 F.2d 649, 651 (6th Cir.1993), we also recognize "authority construing Section 15 interchangeably with authority construing Rule 603." *Ohio Co. v. Nemecek,* 98 F.3d 234, 236 (6th Cir.1996).

The *Howsam* opinion emphasizes the well-established "liberal federal policy favoring arbitration agreements" while noting the equally well-established exception to that policy: "The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" 537 U.S. at 83 (quoting *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)) (emphasis deleted). The specific question before the Court was whether the time-limit provision in the NASD rules falls within the scope of the exception and, thus, whether it was subject to judicial review rather than submission to the arbitrator. After noting that almost any "potentially dispositive gateway question" might be termed a "question of arbitrability," *Howsam,* 537 U.S. at 83, the Court adopted the dichotomy set out in the comments to § 6 of the Revised Uniform Arbitration Act of 2000 (RUAA):

> [I]n the absence of an agreement to the contrary, issues of substantive arbitrability ... are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.

*Id.* at 85 (emphasis in original) (quoting RUAA § 6, comment 2, 7 U.L.A. at 13 (Supp.2002)). Applying this rule to the NASD rule at issue, the Court held that its interpretation was "a matter presumptively for the arbitrator, not for the judge," noting that the time-limit rule "closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.'" *Id.,* citing *Moses H. Cone Memorial Hospital v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting a presumption that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability"). The Court also stressed the comparative expertise of the NASD arbitrators to interpret their own rule. *See id.*

In its appellate brief, filed in this court just after the *Howsam* opinion was released, Dean Witter attempts to thwart *Howsam's* application in this case by arguing that the presumption in favor of submitting the case to arbitration should be trumped by the fact that the plaintiff conceded in the district court that his claims were barred by the six-year limitation and did not seek to proceed to arbitration. These developments occurred, however, at a time when Sixth Circuit precedent would have made it difficult if not impossible for the plaintiff to have submitted his claims to arbitration and before the decision in *Howsam* made it clear that the validity of the defense raised in this case was a matter for the arbitrator to determine. Indeed, the facts in *Howsam* were demonstrably less favorable to the plaintiff than the facts in this case. Karen Howsam claimed that Dean Witter had "misrepresented the virtues" of certain limited partnerships in which she had invested, *id.* at 81. There is no suggestion in *Howsam*, unlike the situation here, that the defendants engaged in fraudulent concealment and thus provided a basis upon which an arbitrator might arguably find reason to toll the running of the six-year period under the set of rules applicable to the arbitration. There is also the possibility that the arbitrators might determine that the "occurrence or event" that triggered the time period began at some point later than 1995. In any event, we do not believe that, under *Howsam*, the plaintiff can avoid going to arbitration simply by conceding that his claims are ineligible for arbitration.

Finally, we note that the SEC's *amicus* brief advances an argument that ineligibility under Rule 603 does not necessarily preclude litigation of valid claims in state and federal court, *i.e.*, that arbitration is not an exclusive remedy in this situation. In view of our ruling on the *Howsam* question presented in this case, that argument would appear to be premature.

### CONCLUSION

Under *Howsam*, the district court in this case did not have the authority to hold that Smith's claims were barred by the NYSE six-year eligibility rule and should have ordered the parties into arbitration. We therefore REVERSE the judgment entered below and REMAND the case with directions to the district court to refer the case to arbitration or dismiss it without prejudice in order to permit the parties to submit the case to arbitration.