**In the matter of the ARBITRATION BETWEEN OLTCHIM, S.A., Petitioner,**

v.

**VELCO CHEMICALS, INC., Respondent.**

**No. 02 CIV. 9787(SCR).**

United States District Court, S.D. New York.

Nov. 5, 2004.

Radu Herescu, Law Offices of Radu Herescu, Esq., Elmhurst, NY, for Plaintiff.

MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

Plaintiff Oltchim, S.A. ("Oltchim") brings a petition for recognition and enforcement

of two foreign arbitral awards. Defendant Velco Chemicals, Inc. ("Velco") disputes the validity of the awards and seeks dismissal of the action.

## I. The Facts

Oltchim, a Romanian corporation, produces polyol, a chemical compound used in the production of flexible foam. Velco is an international distributor of polyurethane raw materials, including polyol. The two firms entered into various contracts in the 1990s that governed their agreement that Velco would purchase polyol from Oltchim and sell it to Velco's customers. Over the course of the relationship, the parties entered into repeated agreements referred to as "frame contracts," that set forth the rights and obligations of both parties concerning the transactions between them regarding polyol. These agreements each contained arbitration clauses that stated,

> Whatever dispute deriving from the present contract and that could not be settled in a friendly way—will be submitted to the Arbitration instances with the Chamber of Commerce of Romania, whose awards will be final and executory.

> The main law applied to the present contract is that of Romania.

Relations between the parties broke down in 1998 and 1999. Oltchim claims that in July 1999, Velco failed to pay for polycol it had purchased. Velco was the first to take legal action, however. It brought suit against Oltchim in federal court in the Southern District of New York on December 6, 1999, alleging breach of contract and seeking 3,243,000 DM in damages as well as pre and post judgment interest, and costs and attorneys fees. This suit was given case number 99 Civ. 11794.

On January 13, 2000, Oltchim filed a demand for arbitration with the Court of International Arbitration of the Chamber of Commerce and Industry of Romania (the "Arbitration Court") against Velco pursuant to Frame Contract 99/PET—C.C/3.12.1998 covering sales of polyol by Oltchim to Velco for the year 1999. This contract contained the arbitration clause excerpted above. Oltchim claimed 2,282,-295 DM in unpaid fees and arbitration expenses.

On January 27, 2000, Velco moved to enter a default judgment against Oltchim due to its nonappearance in 99 Civ. 11794. Oltchim cross-moved to dismiss the case for lack of subject matter and in personam jurisdiction and to compel arbitration on February 28, 2000. Velco opposed the cross-motion in a filing on March 22, 2000.

Velco also appeared in the Romanian arbitration in March 2000.

On July 24, 2000, the Hon. Barrigton D. Parker heard oral argument on the motions. In his decision on the record, he found that a broad arbitration clause existed and stayed the case, placing it on the suspense calendar pending the outcome of the arbitration in Romania. Transcript of 99 Civ. 11794, dated July 24, 2000, at 15–16. Judge Parker took no position on whether or not Velco should bring cross-claims in the arbitration. When Velco's attorney asked if he was directing Velco to assert a counterclaim in Romania, he answered, "I can't tell you what pleadings are available or appropriate in Romania. I am not dismissing the action [99 Civ. 11794]. The action is here, but it seems to me the prudent thing to do is to see what results from the Romania arbitration proceeding, especially since you're in the middle of it." *Id.* at 12.

Velco admits that on November 17, 2000, it filed a counterclaim in the Arbitration Court asserting the same claims as those

set forth in 99 Civ. 11794. Bizarrely, Velco characterizes this as an attempt to have "only the jurisdictional issues" presented to the Arbitration Court and claims that the submission was made in compliance with Judge Parker's "conditional order" directing it to proceed to arbitration to resolve the arbitrability dispute. As shown above, Judge Parker gave no "order" describing what Velco should or should not do before the Arbitration Court. Also, there is nothing in the November 17 submission that challenges the jurisdiction of the Arbitration Court; it is simply a restatement of the claims Velco made in the civil action in the Southern District of New York.

The Arbitration Court met on December 21, 2000. At this meeting, Velco asked the court for permission to file written documents sustaining its counterclaim and challenging the competence of the arbitration Court. On December 7, 2000, Velco filed a written challenge to the jurisdiction of the Arbitration Court, in which it argued that e 1998 Frame Contract (under which Oltchim made its claims) was invalid because the signator was not authorized by the company to bind it.

The minutes of the meeting of the Arbitration Court on March 15, 2001, reflect that Court's holding that when Velco filed its counterclaims, paid the fee to do so, and requested evidence, it agreed to resolve its dispute in that forum. The Arbitration Court further held that the agreement to the forum could only be reversed by mutual agreement. It held that examination of other issues concerning jurisdiction and the Frame Contract of December 3, 1998, had no relevance.

At a hearing on May 8, 2001, the Arbitration Court severed Oltchim's claim from Velco's counterclaim.

Oltchim's claim was heard by the arbitral panel on June 6, 2001. On June 27, 2001, the Arbitration Court awarded Oltchim the full amount it sought against Velco. Velco moved in Romania to vacate that award. Velco's counterclaims were heard on May 28, 2002, and on June 28, 2002, the panel dismissed those counterclaims and ordered Velco to pay Oltchim's attorneys fees on the second arbitration. Again, Velco moved to vacate the judgment.

On March 26, 2003, the Romanian Supreme Court of Justice, Commercial Division (the "Supreme Court") dismissed Velco's motion to vacate the arbitration decision of June 27, 2001, and ordered Velco to pay the costs that Oltchim incurred in arbitrating Velco's counterclaims. On March 17, 2003, Velco's appeal of the June 28, 2002, decision was rejected. On December 8, 2003, the 9–Judge Panel of the High Court of Cassation and Justice denied Velco's appeal of the March 17, 2003, decision. On January 26, 2004, the Panel of Nine Judges ordered Velco to submit a cash bond in order to have execution of the December 8, 2003, decision suspended. On February 16, 2004, the nine-judge panel denied Velco's petition for a suspension of the execution of arbitral awards in light of the facts that said bond had not been posted. Velco made an extraordinary appeal to an *en banc* nine judge panel of the High Court of Cassation and Justice, in an attempt to annul the December 8, 2003, holding. On March 15, 2004, the *en banc* panel of judges ruled against Velco for a final time, end the proceedings in Romania.

## II. The Law

■ Foreign arbitral awards are recognized and enforced under the Federal Arbitration Act, (the "Act") which codified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") in Title 9, United

States Code, Chapter 2. Both the United States and Romania are signators to the Convention. 9 USC 201. The United States has strictly adhered to this convention, and enforced arbitral awards made under the Convention in its courts. The United States Supreme Court has observed that,

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver,* 417 U.S. 506, 520, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Act permits any party to an arbitration to apply to any court having jurisdiction for an order confirming the award within three years after an award is made. In 02 Civ. 9787, Oltchim makes such an application.

■ The Act instructs that courts "shall" confirm the award unless it finds a ground for refusal or deferral of recognition or enforcement specified in the Convention. 9 USC 207. The burden of proof is on the party opposing the recognition and enforcement of the arbitral award. *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier,* 508 F.2d 969, 973 (2d. Cir.1974).

Velco presents several arguments for refusal or recognition of the award, but they all boil down to its claim that it was not obligated to arbitrate because the person who allegedly signed the frame contract did not have authority to do so. It argues that because the arbitration clause was unenforceable, the arbitral awards should be overturned. ·

Velco argues that it was entitled to a District Court trial to resolve the question of whether it was obligated to arbitrate under the Frame Contract before that action was stayed. It contends that, in the absence of a clear and unambiguous agreement to the contrary, the Court, not the arbitrator, must resolve any dispute concerning the formation of an arbitration agreement. In essence, Velco is suggesting that this Court should give a *de novo* review of its claim that it had no obligation to arbitrate.

A "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court [and not an arbitrator] to decide." *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). "[I]ssues of substantive arbitrability are for a court to decide and issues of procedural arbitrability, i.e. whether prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.,* 537 U.S. at 85, 123 S.Ct. 588.

However, the "Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

At oral argument on July 24, 2000, and again in a Memorandum Decision and Order issued on November 15, 2000, Judge Parker observed that there was an ongoing arbitration being conducted in Romania pursuant to arbitration clauses found in a series of contracts entered between the parties from 1995 through 1998,

and that both parties had appeared before the Romanian arbitrators for certain purposes. In light of these facts, Judge Parker found that "the prudent course [was] to stay this matter pending the resolution of arbitration proceedings in Romania." Transcript of July 24, 2000 Proceedings at 11. The Court noted that "it seems... rather clear that this is a broad arbitration clause. Whether ultimately [the arbitration] resolves every aspect of the dispute between the parties is something that remains to be seen ... but ... some significant portion of the dispute between the parties, if not all the disputes, is likely to be resolved by the Romanian arbitration." *Id.*

After Judge Parker stayed this litigation pending the resolution of the arbitration, Velco filed an appeal to the Second Circuit, which was rejected on October 18, 2000. Velco also sought an order certifying the Court's decision for immediate interlocutory appeal. This request was denied on November 15, 2000. On July 7, 2001, Velco filed a Rule 60(b) motion to vacate the Court's decision on July 24, 2000, and to lift the stay. Judge McKenna, to whom this matter was transferred, issued an Order denying that motion on January 4, 2002. In that order, Judge McKenna noted that after Judge Parker stayed the matter pending arbitration, Velco filed counterclaims in the arbitration requesting relief for the same alleged actions it describes in the U.S. action.

■ In light of the fact that Velco appeared in the Romanian arbitration and filed counterclaims within that forum, its contentions that (1) it was under no obligation to arbitrate, (2) the frame contract was invalid, and (3) the arbitration court's alleged reliance on other jurisdictional authority was erroneous, are all deemed waived.

Velco's remaining contentions are as follows: that the Court should refuse recognition of the June 28, 2002 award because there was no written arbitration agreement; that the Court should refuse recognition of both awards because the Arbitration Court exceeded its authority; and that judicial estoppel should prevent Oltchim from asserting that the awards were properly grounded; and that the awards are unenforceable under Article V of the Convention. These contentions present a variety of ways of making the same point, that the Frame Contract was invalid and the decisions of the Arbitration Court and the various Romanian appeals courts should not be upheld. They are rejected.

Oltchim's petition for recognition and enforcement of the foreign arbitral awards is hereby granted.

Velco has made a motion to consolidate the actions in 99 Civ. 11794. Rule 42(a) of the Federal Rules of Civil Procedure provides:

When actions involving a common question of law or fact are pending before the court...it many order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid necessary costs or delay.

The two cases that are under consideration herein, 99 Civ. 11794 and 02 Civ. 9787 arise from the same underlying contractual dispute. As noted above, all claims raised in 99 Civ. 11794 were presented as counterclaims in the Romanian arbitration. The stay is lifted, and the two cases consolidated, as they in fact contain identical questions of law and fact. The Arbitration Court's ruling on these matters is final.

IT IS SO ORDERED.