In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4051

LUMBERMENS MUTUAL CASUALTY COMPANY,

*Plaintiff-Appellee,*

*v.*

BROADSPIRE MANAGEMENT SERVICES, INC. and
PLATINUM EQUITY, LLC,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 00386—**Harry D. Leinenweber**, *Judge.*

ARGUED MAY 19, 2010—DECIDED OCTOBER 13, 2010

Before O'CONNOR, *Associate Justice,*[*] and WILLIAMS
and SYKES, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This appeal involves a debate
over the arbitrability of four purchase price disputes
arising out of a transaction between Lumbermens

[*] The Honorable Sandra Day O'Connor, Associate Justice
(Retired) of the United States Supreme Court, sitting by designa-
tion

Mutual Casualty Company ("Lumbermens") and Broadspire Management Services, Inc. ("Broadspire"). Lumbermens sold Broadspire an insurance administration business in 2003 pursuant to a purchase agreement which provided that certain kinds of price disputes stemming from the transaction would be referred to an accounting or appraisal firm for arbitration. Four such price disputes arose, and Lumbermens sought to resolve them under the purchase price dispute procedure. Broadspire refused, asserting that Lumbermens had failed to satisfy certain necessary preconditions set forth in the purchase agreement; specifically, that Lumbermens' written notices stating its disagreements with Broadspire's price determinations lacked the requisite detail. The issue before us is whether the court or the arbitrator should decide this question of whether the necessary preconditions to arbitration have been satisfied. The district court concluded that the question was for the arbitrator, and we agree, because the issue of whether Lumbermens has adequately disputed Broadspire's price reports is a procedural question about a condition precedent to arbitration. We affirm.

## I. BACKGROUND

In July 2003, Lumbermens sold Broadspire[1] an insur-

---

[1] We use the term "Broadspire" to include Defendant-Appellant Platinum Equity, LLC as well. Platinum's role in the transaction is not discussed by the parties in their briefs, but it is characterized in a district court pleading as Broadspire's
(continued...)

ance administration business pursuant to a written Purchase Agreement (the "Agreement"). No cash was exchanged at the time of the closing. Instead, the purchase price was to be based on a series of annual "earnout" and "lump sum" payments to be made by Broadspire over the four years following the transaction, which the parties defined as the "earnout period." Earnout payments would be based on the financial performance of the purchased business each year during the earnout period. Lump sum payments would be made if Broadspire sold off any parts of the purchased company during the earnout period, based on an estimate of the expected performance of the sold asset over the remainder of the four years.

Article III of the Agreement, titled "Purchase Price," set forth the methodology and procedures for determining the amount of the payments due each year. Broadspire had to calculate the amounts owed pursuant to a formula set forth in the Agreement, and prepare and deliver reports to Lumbermens setting forth in "reasonable detail" the calculations and assumptions on which its determinations were based. *See generally* Agreement § 3.3. Upon receiving a report from Broadspire,

---

[1] (...continued)
"former owner." Platinum sought to have itself dismissed from the case before the district court, but the court rejected that motion and held that the question of whether Platinum is a proper party is for the arbitrator. That aspect of the district court's ruling was not specifically appealed, nor does Platinum make any separate arguments from those made by Broadspire.

Lumbermens had 90 days to review it, during which time Broadspire had to make available to Lumbermens any books and records relevant to the review. If Lumbermens decided that it agreed with Broadspire's determination, it would send an "Acceptance Notice" so indicating, or do nothing at all, and the amount Broadspire had set forth would become the binding payment amount for that year. But if Lumbermens disagreed with Broadspire's determination, it had to send Broadspire a "Disagreement Notice" saying so within the 90-day period. A Disagreement Notice has to "set[] forth in reasonable detail the basis for such disagreement and [Lumbermens'] determination of the payment required to be paid to [Lumbermens] under this Section 3.3." Agreement § 3.3(g).

## A.  The Purchase Price Dispute Arbitration Clause

If Lumbermens submitted a timely Disagreement Notice to Broadspire indicating disagreement with a given earnout or lump sum report, the parties first had 30 days to try and resolve the differences themselves. Failing that, the dispute would be submitted to an accounting or appraisal firm for arbitration:

> **Purchase Price Disputes.** If a party delivers a Disagreement Notice to the other party in a timely manner, then Buyer and Seller shall attempt in good faith to resolve such dispute within 30 days from the date of such notice. If Buyer and Seller cannot reach agreement . . . then the dispute shall be promptly referred to an inde-

pendent accounting or appraisal firm of national reputation mutually acceptable to Buyer and Seller, or if the parties are unable to agree on such a firm within 10 days . . . to PricewaterhouseCoopers LLP (the "Accounting/Appraisal Firm") for binding resolution. The Accounting/Appraisal Firm may conduct such proceedings as the Accounting/Appraisal Firm, in its sole discretion, determines will assist in resolving the dispute and shall, within 60 days . . . deliver . . . a written report setting forth its determination of all disputed amounts . . . and its determinations will be conclusive and binding upon the parties.

Agreement § 3.4.


## B.   The General Arbitration Clause

In addition to the § 3.4 arbitration procedure intended specifically for Article III price disputes, the Agreement also contains a catch-all arbitration provision for all other disputes. It provides:

> **Dispute Resolution.** Except as otherwise provided for in Article III, the following shall constitute the exclusive procedures and remedies for all disputes arising out of or relating to this Agreement.

Agreement § 14.11. Section 14.11 requires that the parties attempt in good faith to resolve disputes arising out of the

Agreement, but if they cannot, it provides for binding arbitration by a three-arbitrator panel in accordance with the International Institute for Conflict Prevention & Resolution ("CPR") Rules for Non-Administered Arbitration, and governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").

### C.  The Four Purchase Price Disputes

The full history of the transaction and dispute between the parties is somewhat complex, but all of those details are not necessary to resolve question before us. At issue here are disputes over four price reports—three lump sum reports dated December 7, 2005, March 16, 2006, and October 16, 2006, and one earnout report dated June 22, 2006—that Broadspire provided to Lumbermens under the above-described process and Lumbermens then timely disputed. On each occasion, Lumbermens sent a Disagreement Notice regarding Broadspire's price determination.[2] Each was relatively general. Broadspire disputed the sufficiency of the Dis-

---

[2] Our use of the term "Disagreement Notice" in referring to Lumbermens' objections should not be taken as reflecting any conclusion as to their sufficiency. As we explain herein, that is a question for the § 3.4 arbitrator. Clearly, however, Lumbermens meant for them to be Disagreement Notices; the first objection was obviously disputing Broadspire's December 7, 2005 price report and made reference to Agreement § 3.3(g), and each of the latter three actually bore the heading "Disagreement Notice."

agreement Notices, arguing that they did not meet § 3.3(g)'s requirement that they contain (1) "reasonable detail" and (2) Lumbermens alternative "determination of the payment required." Lumbermens claimed that it could not provide the requisite level of detail called for by § 3.3(g), because Broadspire's price reports were themselves lacking in details that would enable Lumbermens to do so. Lumbermens also claimed in its Disagreement Notices that it had not been given sufficient access to the books and records necessary to properly evaluate Broadspire's determinations.

Lumbermens sought arbitration of each of these four disputes under the Purchase Price Dispute procedures set forth in § 3.4 of the Agreement, but Broadspire refused to arbitrate on the basis that Lumbermens had not met the precondition of filing adequate Disagreement Notices. Instead, Broadspire sought to commence panel arbitration of the disputes under the more general § 14.11 procedures. Eventually, on January 19, 2007, Lumbermens filed a Petition in Aid of Arbitration in the United States District Court for the Northern District of Illinois, seeking to compel arbitration under the § 3.4 provision and to compel Broadspire to produce certain documents and information to which it had not given Lumbermens access.

The district court ruled in favor of Lumbermens. With regard to which arbitration clause governed the dispute, § 3.4 or the broader § 14.11, the district judge concluded that "Lumbermens is clearly right" and that the Article III purchase price dispute procedure applied. The

court concluded that the question of whether Lumbermens' Disagreement Notices were adequate was "certainly within the purview of the arbitrator" and that the question was one that was "peculiarly within the competence" of an accounting/appraisal firm. The district judge ordered the parties to arbitrate the disputes under the § 3.4 procedures, and to each submit within ten days of his ruling the names of two potential accounting or appraisal firms to act as arbitrator to replace PricewaterhouseCoopers, which was already acting as an arbitrator in an unrelated Article III price dispute arbitration.[3] The court also ordered Broadspire to produce certain documents. Broadspire appealed.

## II. ANALYSIS

The question before us is whether a court or an arbitrator should decide the question of whether the parties' disputes are arbitrable under § 3.4 of the Agreement. Broadspire contends that Lumbermens did not file valid Disagreement Notices and has thus failed to satisfy a necessary precondition to bringing the

---

[3] At the time, the parties were in § 3.4 arbitration regarding a fifth price dispute, over Broadspire's 2004 Earnout Report. That report is not at issue in this litigation. We do note, however, that Broadspire did not challenge the arbitrability of that dispute, despite the fact that Lumbermens' Disagreement Notice for that report arguably had the same flaws Broadspire found in the later notices.

dispute within the scope of § 3.4 arbitration, and that a court, not the § 3.4 arbitrator, should determine whether this is in fact the case.[4] Lumbermens responds that the § 3.4 procedure encompasses all disputes relating to purchase price, *including* any disputes over the sufficiency of Disagreement Notices themselves, and that it is for the § 3.4 arbitrator, not a court, to evaluate their sufficiency. Like the district court, we agree with Lumbermens and conclude that the sufficiency of the Disagreement Notices is a question to be answered by the § 3.4 arbitrator.

We review a district court's decision to compel arbitration de novo, and any findings of fact for clear error. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547 (1964) (citations omitted). In ruling on a motion to compel arbitration, we "determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties." *Zurich Am. Ins. Co.*, 466 F.3d at 581.

---

[4] Although it argued it before the district court, Broadspire does not take the position on appeal that the § 14.11 arbitration procedure should apply instead.

### A.  The *Howsam* Framework

The Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002), clarified the division of labor between arbitrators and judges in cases like this one and provides the framework for our analysis. In *Howsam*, the Court determined that the question of whether a grievance has been brought within a time period set by a National Association of Securities Dealers rule is a "gateway procedural dispute" for the arbitrator, not a court, to decide. 537 U.S. at 85. The Court held that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Id.* at 84-85 (emphasis in original) (internal citations and quotations omitted). The *Howsam* Court noted that the Revised Uniform Arbitration Act ("RUAA"), which "incorporate[s] the holdings of the vast majority of state courts and the law that has developed under the FAA" supported its conclusion. *Howsam*, 537 U.S. at 84-85 (citing RUAA § 6(c) and comment 2). The RUAA provides that "an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c). Under *Howsam*, questions such as whether prerequisites to arbitration have been met, or questions of waiver, delay, or other defenses to arbitrability, should be determined by the arbitrator. *See Howsam*, 537 U.S. at 84-85; *see also John Wiley*, 376 U.S. at 557 (arbitrator, not court, should decide whether the party seeking arbitration had

properly completed grievance procedure that was pre-requisite to arbitration under parties' agreement); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("waiver, delay, or a like defense" are questions for arbitrator).

Our circuit has followed *Howsam* in distinguishing between "substantive" and "procedural" arbitrability questions, and in holding that the latter are presumptively for an arbitrator to decide. In *Employers Insurance Co. of Wausau v. Century Indemnity Co.*, 443 F.3d 573, 581 (7th Cir. 2006), for example, we held that the question of whether an arbitration agreement forbade consolidated arbitration was a procedural one for the arbitrator to answer, noting that "[t]he Supreme Court made clear in *Howsam* that procedural issues are presumptively for the arbitrator to decide." (citation omitted). And in *Zurich American Insurance Co.*, we found that questions about the preclusive effect of a California state judgment on the scope of the parties' arbitrable disputes were similarly an issue for the arbitrator. 466 F.3d at 581. We concluded that because the issue of preclusion was being raised by a party as a defense to arbitration, it was a procedural question under *Howsam* that fell to the arbitrator to decide. *Id.*

### B. The Disagreement Notice Dispute Is a Question for the Arbitrator

Just like the questions in *Howsam*, *Zurich American*, or *Employers Insurance*, the adequacy of Lumbermens'

Disagreement Notices is a procedural question about a condition precedent to arbitration under § 3.4 of the parties' agreement and is for the arbitrator to address. *See Howsam*, 537 U.S. at 84-85; *Zurich Am. Ins. Co.*, 466 F.3d at 581; *Employers Ins.*, 443 F.3d at 577. Lumbermens' and Broadspire's disagreements over whether the preconditions have been met grow out of the dispute between the parties and bear directly on the arbitrator's final disposition of what the purchase price should be. *See John Wiley*, 376 U.S. at 557. In determining whether a Disagreement Notice contains sufficient detail, the § 3.4 arbitrator will be examining the same documents and assessing the same issues relevant to the actual substantive resolution of the parties' price dispute. It would be strange to divide these largely overlapping tasks between the court and the arbitrator. *See id.* ("It would be a curious rule which required that intertwined issues . . . growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result."). This is particularly true in a case like this one, when the determination being made is one within the particular expertise of the arbitrator, not a court. *See Howsam,* 537 U.S. at 85 (law assumes "expectation that aligns (1) decisionmaker with (2) comparative expertise"); *see also JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (accounting firm "undoubtedly possesses greater expertise in determining how much disclosure an EBITDA audit requires"). In evaluating whether Lumbermens' Disagreement Notices provide

the "reasonable detail" required by § 3.3(g), the arbitrator will necessarily be engaging in a fact-intensive, specialized inquiry very similar to the inquiry it would undertake in order to actually determine what the proper purchase price should be.

"In certain contexts, it is appropriate to presume that parties that enter into an arbitration agreement implicitly authorize the arbitrator to adopt such procedures as are necessary to give effect to the parties' agreement. *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, - - - U.S. - - - -, 130 S. Ct. 1758, 1775 (2010) (citing *Howsam*, 537 U.S. at 84). The Agreement here presents one such context. It is appropriate to presume that the parties have implicitly authorized the § 3.4 arbitrator to adopt procedures necessary to give effect to their agreement. Section 3.4 itself provides that the arbitrator may "conduct such proceedings as [it] . . . determines will assist in resolving the dispute. . . ." Determining the adequacy of Disagreement Notices logically falls within this grant of authority. Indeed, evaluating such documents is inextricably related to the core function that the arbitrator performs under the Agreement—reaching a conclusion as to "all disputed amounts" at issue. Agreement § 3.4.

An analogous case from the Sixth Circuit buttresses our conclusion here. In *JPD, Inc. v. Chronimed Holdings, Inc.,* the parties signed a purchase agreement for the sale of a pharmacy that involved a price dispute arbitration process nearly identical to the one set forth in Article III here. 539 F.3d at 392-93. The purchaser, Chronimed, had to send an earnings before interest, taxes, depreciation,

and amortization ("EBITDA") calculation to the seller, DiCello, for the purposes of determining an "additional purchase price payment" to be made to DiCello after the transaction based on the pharmacy's 2006 earnings. *Id.* at 390. If DiCello disagreed with the calculation, he had to file an objection setting forth in "reasonable detail" the basis for his disagreement, and if the parties could not settle the dispute in good faith, it would be referred to an accounting firm for resolution just as in the case before us. *See id.* DiCello did object to Chronimed's EBITDA calculation, but instead of pursuing arbitration, sued for an accounting and damages. *Id.* Chronimed moved to stay the suit and compel arbitration, which the district court denied on a waiver theory. *Id.* On appeal, DiCello argued that arbitration before the accounting firm was not proper because Chronimed had failed to sufficiently document its EBITDA calculation, thus waiving its right to arbitrate the dispute under the purchase agreement. *Id.* at 391-92. Applying *Howsam*, the Sixth Circuit vacated the district court's ruling, concluding, *inter alia*, that the question of whether Chronimed had sufficiently documented the pharmacy's finances was "exactly the type of condition [] precedent to an obligation to arbitrate that *Howsam* presumptively allocated to the arbitrator." *Id.* at 392-93 (internal quotation omitted). The same conclusion is appropriate here. Just as questions over the sufficiency of an EBITDA calculation were issues about a condition precedent allocated to the arbitrator in *JPD*, questions over the sufficiency of Lumbermens' Disagreement Notices—similarly a condition precedent

to price dispute arbitration—are questions for the § 3.4 arbitrator here. *See id.; see also Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) (payment of fees is question of procedural condition precedent to arbitration that is for arbitrator, not a court, to decide).

Broadspire cites our decision in *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers,* 422 F.3d 522, 528 (7th Cir. 2005), in support of its argument to the contrary, but that case is inapposite. In *Corman*, the parties disputed whether a grievance was timely under the terms of an expired collective bargaining agreement. 422 F.3d at 527. The dispute involved a question of "whether there was an agreement to arbitrate this set of grievances at all," a fundamental question of arbitrability properly answered by a court. *Id.; see Howsam*, 537 U.S. at 84. The dispute in this case is different, and falls on the other side of the *Howsam* divide for a key reason. Here, there is no dispute as to the existence of an agreement to arbitrate itself. Instead, this is a procedural dispute over preconditions *to* that arbitration. *See Employers Ins.*, 443 F.3d at 577 (procedural question of arbitrability was for arbitrator because it "does not involve whether Wausau and Century are bound by an arbitration clause or whether the arbitration clause covers the Aqua-Chem policies."); *see also Dealer*, 588 F.3d at 887. For us to accept Broadspire's argument "would require a court to delve too deeply into questions of the parties' compliance with the terms of the agreement, which are more properly for the arbitrator." *Corman,* 422 F.3d at 528.

### III.  CONCLUSION

The district court's ruling is AFFIRMED.