First Weber Group, Inc. and James R. Imhoff, Jr.,
Petitioners-Appellants,†

v.

Synergy Real Estate Group, LLC and James N.
Graham, Respondents-Respondents.

Court of Appeals

*No. 2013AP1205. Submitted on briefs December 9, 2013.*
*—Decided March 20, 2014.*

2014 WI App 41

(Also reported in 846 N.W.2d 348.)

† Petition for review filed.

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Kim Moermond* of *First Weber Group*, Madison.

On behalf of the respondents-respondents, the cause was submitted on the brief of *James N. Graham* of *The Synergy Real Estate Group LLC*, Madison.

A nonparty brief was filed by *Debra P. Conrad* and *Tracy A. Rucka* of *Wisconsin REALTORS® Association* of Madison, for the Wisconsin REALTORS® Association.

Before Blanchard, P.J., Sherman and Kloppenburg, JJ.

¶ 1 BLANCHARD, P.J.   First Weber Group, Inc., and James Imhoff, Jr. (hereafter, First Weber), appeal the denial of First Weber's petition to compel arbitration of a dispute with Synergy Real Estate Group, LLC,

and James Graham (hereafter, Graham).[1] The circuit court denied First Weber's petition because its request to arbitrate was filed outside the 180–day limitation period contained in the agreement to arbitrate. First Weber argues that the court erred in addressing the time limitation question, because it involves a procedural rule of arbitration and therefore is a question to be resolved in the arbitration process. In the alternative, First Weber argues that, even if the court had authority to address the time limitation rule, the court erred by selecting the wrong trigger date to commence the limitation period.

¶ 2. We conclude that the court properly addressed the time limitation question because, under the agreement to arbitrate, disputes more than 180 days old are not subject to arbitration and First Weber fails to point to clear and unmistakable terms in the agreement to arbitrate specifying that disputes about the time limitation must be resolved through the arbitration process. We also conclude that, regardless of the standard of review we might apply, the court did not err in selecting the trigger date for the time limitation. Accordingly, we affirm.

## BACKGROUND

¶ 3. The pertinent facts are not contested on appeal. In order to place in proper context the petition to compel arbitration that is the focus of this appeal, we first provide background regarding three topics: the agreement to arbitrate entered into by Graham; a separate but pertinent 2009 arbitration proceeding

---

[1] We use "First Weber" and "Graham" as shorthand references to the parties on each side of this case because no party calls our attention to a distinction among petitioners or among respondents that matters to any issue raised on appeal.

First Weber pursued against Graham; and a separate arbitration subsequently sought by First Weber.

*Agreement to Arbitrate*

¶ 4.   During pertinent time periods, Graham was a voluntary member of the Realtors Association of South Central Wisconsin (hereafter, the Association). In order to join the Association, Graham was required to and did sign a "Membership Application Form." This form includes the following language:   "I agree to abide by the Code of Ethics of the National Association of REALTORS, and the Constitution, Bylaws, Rules and Regulations of [the Realtors Association of South Central Wisconsin], the State Association and the National Association." The application form does not use any variation on the word arbitration (such as arbitrate or arbitrability), nor does it refer more generally to the concept of Graham foregoing the right to litigate disputes.

¶ 5.   To locate pertinent references to arbitration, one turns to the "Code of Ethics of the National Association of REALTORS" referenced in the Membership Application Form, portions of which are included in the record on appeal. The record reflects that this document is actually entitled the Code of Ethics and Arbitration Manual of the National Association of Realtors (hereafter the Manual).[2]

¶ 6.   The portions of the Manual in the record include Article 17 and Section 44, which call for mem-

---

[2] It appears that First Weber submitted to Judge Colás portions of the 2009 version of the Manual and that Graham submitted portions of a Manual version that dates from at least 2011 if not later. However, neither party suggests that there are differences that might matter between the portions of the two Manual versions that the parties submitted to the circuit court.

bers to arbitrate, "in accordance with the regulations of" the Association, on a broad range of topics, and arbitration is described as a "duty and privilege" of membership. Most pertinent, Article 17 states in part:

> In the event of contractual disputes or specific non-contractual disputes as defined in [an identified subsection of Article 17] between REALTORS (principals) associated with different firms, arising out of their relationship as REALTORS, the REALTORS shall submit the dispute to arbitration in accordance with the regulations of [the Association] rather than litigate the matter.

¶ 7. Portions of the Manual in the record also provide a time limitation on the filing of requests to arbitrate. The Manual uses the following language in at least two separate places:

> Requests for arbitration must be filed within one hundred eighty (180) days after the closing of the transaction, if any, or within one hundred eighty (180) days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later.

### 2009 Arbitration, Arbitration Award, and Court Confirmation

¶ 8. While this appeal focuses on the decision of the circuit court to deny First Weber's request to compel arbitration in 2012 and 2013, pertinent history involves a 2009 arbitration between the same parties before the Association, which we now summarize.

¶ 9. The prior arbitration involved a dispute over a commission arbitrated before the Association. To initiate the arbitration, First Weber representatives executed and filed with the Association an Association-

497

created form entitled "Request and Agreement to Arbitrate and/or Attend Mediation Proceedings," on February 25, 2009. This form included the same language as quoted above regarding the limitation period, using the only italicized language that is used on the form, directly under the place for entry of the date: "*(Must be filed within 180 days after the closing of the transaction, if any, or within 180 days after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence, whichever is later.)*."

¶ 10. In response to this request for arbitration, Graham executed and filed an Association form entitled "Response and Agreement to Arbitrate and/or Attend Mediation Proceedings," on April 8, 2009.

¶ 11. The case proceeded to arbitration, and the panel issued an award in favor of First Weber in the amount of $5,440. In October 2010, First Weber filed in the circuit court a petition to confirm this award, pursuant to WIS. STAT. § 788.09, asserting that Graham had not paid it. First Weber's prayer for relief included a request to "award [First Weber's] costs and reasonable attorney fees."

¶ 12. On March 8, 2011, the circuit court (Hon. John C. Albert) issued a decision and order, confirming the award and rejecting Graham's objections. The court set a date for a subsequent hearing on the question that would later become the subject of the instant request to compel arbitration: whether First Weber was entitled to its attorney's fees and costs incurred in connection with obtaining court confirmation of the arbitration award.

¶ 13. First Weber's claimed attorney's fees and costs were all related to the court proceedings seeking to confirm the arbitration award, and not to the underlying arbitration that resulted in the award. In later

498

submitted claims, First Weber would first claim $4,309.34 in fees and costs, but later amended the amount to $4,849.34.

¶ 14. On March 10, 2011, Graham wrote to the court, copying First Weber, explaining his view that there were "three independent reasons why [First Weber's] demand for costs and fees in this action is improper."[3]

¶ 15. On March 16, 2011, the court issued a decision and order denying the request for fees and costs. On March 30, 2011, First Weber moved for reconsideration, submitting a nine-page, single spaced brief on the fees and costs issue. At a hearing on October 14, 2011, the court made an oral ruling denying the motion for reconsideration and confirming the award without fees and costs. The court stated:

> So my ruling is this.
>
> The award is confirmed without an award of attorney's fees. I'm going to give Mr. Graham 30 days from today's date to pay the award . . . . If he pays that, that's the end of the matter.

---

[3] Inexplicably, even though the circuit court made it an express element of its written decision now challenged by First Weber, this March 10, 2011 letter from Graham is not in the record transmitted to this court. First Weber, as the appellant, had an obligation to make sure that the record transmitted to this court contained all documents material to the issues it raises on appeal. *See State v. Dietzen*, 164 Wis. 2d 205, 212, 474 N.W.2d 753 (Ct. App. 1991) (appellant responsible for assembling and submitting record); *see also* WIS. STAT. § 809.15(1)(a). However, the March 10, 2011 letter is reproduced in Graham's appendix and First Weber raises no issue as to its authenticity. Therefore, we consider it part of the appellate record. *See Kox v. Center for Oral and Maxillofacial Surgery, S.C.*, 218 Wis. 2d 93, 97 n.5, 579 N.W.2d 285 (Ct. App. 1998).

¶ 16. On or about October 31, 2011, Graham paid First Weber the confirmed award, but did not pay the fees and costs from the confirmation proceeding.

¶ 17. On December 5, 2011, Judge Albert entered a written order confirming the award of $5,440. Consistent with its prior rulings, the court denied First Weber's request for attorney's fees and costs expended in connection with the confirmation action, having concluded that the court lacked authority to award these as part of the confirmation proceeding.[4]

*Second Arbitration Sought by First Weber, for Fees and Costs of Confirmation of First Arbitration*

¶ 18. This brings us to First Weber's second request for arbitration, which First Weber now seeks to compel. Sometime in the weeks before June 5, 2012, First Weber filed with the Association a new "Request and Agreement to Arbitrate and/or Attend Mediation Proceedings" form, seeking to initiate an arbitration regarding the costs and fees it claimed from the confirmation proceeding before Judge Albert.[5] This form request included the same italicized language reciting the 180–day time limit on arbitration requests as had been included on First Weber's initial request for arbitration.

¶ 19. First Weber's second arbitration request was based on the following language from the "Response

---

[4] First Weber did not appeal Judge Albert's denial of First Weber's request for an award of its fees and costs and we do not address the merits of that decision.

[5] First Weber asserts without record support that the request to arbitrate was filed on May 8, 2012. However, a dated document, which was plainly created after the request to arbitrate was filed, appears to establish, without dispute from either party, that the request was filed sometime in the weeks before June 5, 2012.

and Agreement to Arbitrate and/or Attend Mediation Proceedings," which, as described above, Graham signed on April 8, 2009, in connection with the original arbitration:

> In the event I do not comply with the arbitration award and it is necessary for any party to this arbitration to obtain judicial confirmation and enforcement of the arbitration award against me, I agree to pay the party obtaining such confirmation the costs and reasonable attorney's fees incurred in obtaining such confirmation and enforcement.

¶ 20. In contrast to his response to the first request to arbitrate, in response to this second request Graham did not file a "Response and Agreement to Arbitrate and/or Attend Mediation Proceedings." After he was served with notice of an arbitration hearing in August 2012, Graham e-mailed in response that he would not be participating, and on the day of the scheduled arbitration, September 26, 2012, he declined to attend. The Association took the position that this second arbitration could not occur without Graham's signed agreement to arbitrate or his appearance, absent court action.

*Petition to Compel Arbitration*

¶ 21. On November 2, 2012, First Weber filed in the circuit court the petition at issue in this appeal, to compel arbitration pursuant to Wis. Stat. § 788.03 (2011–12).[6] This action was assigned to the Honorable Juan B. Colás.

---

[6] WISCONSIN STAT. § 788.03 (2011–12) provides in pertinent part:

> The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration

¶ 22. In a written decision and order issued in April 2013, Judge Colás decided several issues raised by the parties, but we conclude that two decisions are dispositive in support of the court's denial of First Weber's petition to compel arbitration: (1) the question of whether arbitration is barred by the 180–day time limitation is a proper subject for court determination, not for the arbitration process; and (2) First Weber was aware of facts constituting the arbitrable matter no later than March 10, 2011 (the date of Graham's letter to Judge Albert asserting three reasons why First Weber's demand for fees and costs were improper). Based on these decisions, Judge Colás concluded that First Weber had been obligated to seek arbitration within 180 days of March 10, 2011, "rather than continuing to pursue fees in litigation," and that the time limit expired on September 6, 2011. Under the agreement to arbitrate, the court concluded, "[a]fter September 6, 2011 the dispute was no longer arbitrable." As stated above, First Weber filed its second request to arbitrate in May or June 2012, approximately seven months after the deadline to seek arbitration under the 180–day limit, as determined by the circuit court.

may petition any court of record having jurisdiction of the parties ... for an order directing that such arbitration proceed as provided for in such agreement .... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

## DISCUSSION

## I. ARBITRABILITY OF THE TIME LIMITATION ISSUE

¶ 23.  First Weber contends that the arbitration process, and not the court, should have been responsible for determining whether the dispute between First Weber and Graham regarding fees and costs was arbitrable in light of the 180–day time limitation. That is, First Weber challenges the circuit court's authority to construe the time limitation contained in the agreement to arbitrate.

■

¶ 24.  Both parties recognize that First Weber's appeal from denial of its motion to compel arbitration "involves issues of contract interpretation and a determination of substantive arbitrability, questions of law we review de novo." *See Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶ 10, 322 Wis. 2d 238, 776 N.W.2d 272.

■■

¶ 25.  Arbitration "is a matter of contract and, as such, no party can be required to submit to arbitration any dispute which he or she has not agreed to submit." *Id* ., ¶ 12. Determining whether parties have agreed to submit a dispute to arbitration—often referred to as the determination of arbitrability—"is an issue for judicial determination." *Id.*

¶ 26.  We explained the fundamental arbitrability test to be applied by courts in *Cirilli*:

There is a strong presumption of arbitrability where the contract in question contains an arbitration clause. Therefore, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Thus, when a court is called upon to ascertain the arbitrability of a dispute, the court's function is limited to a determination of whether:  (1) there is a construction of the arbitration clause that would cover the grievance on its face and (2) whether any other provision of the contract specifically excludes [arbitration of the grievance].

*Id.,* ¶ 14 (citations omitted) (quoted source omitted); *see also* WIS. STAT. § 788.03 (to compel arbitration, court must be "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue").

¶ 27.  However, as the United States Supreme Court has explained and Wisconsin courts have followed, there is "an important qualification," to this strong presumption of arbitrability that reverses the presumption on one set of questions.[7] *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944–45 (1995); *see also Kimberly Area Sch. Dist. v. Zdanovec,* 222 Wis. 2d 27, 39–42, 586 N.W.2d 41 (Ct. App. 1998). The qualification applies "when courts decide whether a party has agreed that arbitrators should decide arbitrability:  Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r]

---

[7] Because Wisconsin statutes are patterned after the Federal Arbitration Act, Wisconsin courts may "consider federal court interpretations of the federal statutes on arbitration as an aid in the resolution" of interpretation of the Wisconsin Arbitration Act. *See Employers Ins. of Wausau v. Jackson,* 190 Wis. 2d 597, 610–11 & n.5, 527 N.W.2d 681 (1995).

and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (quoting *AT & T Techs. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

¶ 28. Wisconsin courts have long recognized this reversal in the presumption regarding the question of whether the parties have agreed that the arbitrator decides a question of arbitrability. "If a party asserts that the arbitrator is to decide the question of arbitrability 'the claimant must bear the burden of a clear demonstration of that purpose.' " *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 102, 253 N.W.2d 536 (1977) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 n.7 (1960), and addressing arbitration dispute arguably governed by Wis. Stat. § 298.03 (1977), the predecessor to § 788.03); *see also Kimberly Area Sch. Dist.*, 222 Wis. 2d at 40 (evidence of grant of authority to arbitrators to decide arbitrability "must be 'clea[r] and unmistakabl[e].' " (quoting *AT & T Techs.*, 475 U.S. at 649)).

¶ 29. As we now explain, we apply these standards to conclude that the circuit court properly took up the time limitation issue. Assuming without deciding that there is a construction of the agreement to arbitrate that would cover the fees-and-costs dispute, First Weber has failed to carry its burden of demonstrating, by pointing to clear and unmistakable language in the agreement to arbitrate, an intent that the time limitation issue be decided as part of the arbitration process. Therefore, as a matter of law, the fees and costs dispute does not belong in arbitration.

¶ 30. We begin by focusing on the terms of the agreement to arbitrate. First Weber does not point to any agreement to arbitrate apart from the application form that Graham signed to become a member of the

Association, when read as incorporating the terms of the Manual that was referenced (apparently by inaccurate title) in the application.[8] As summarized above, the application form that Graham submitted to the Association relied on the terms of the Manual to reference the topic of arbitration. The application says nothing about arbitration. In fact, the only reference it makes to dispute resolution appears to contemplate potential litigation between the parties, not arbitration ("shall . . . not form the basis of any action by me for slander, libel or defamation of character").

¶ 31.   Thus, there was here no single "mandatory arbitration clause," to use a phrase often employed in the case law, contained within an agreement between Graham and the Association and between a First Weber representative and the Association. *Cf. Cirilli*, 322 Wis. 2d 238, ¶ 3. Instead, there was a broad agreement to "abide by the Code of Ethics of the National Associa-

---

[8] Neither party contends that any of the following documents individually or together constituted an independent agreement to arbitrate:   the two forms entitled "Request and Agreement to Arbitrate and/or Attend Mediation Proceedings" that First Weber representatives executed and filed, or the single form entitled "Response and Agreement to Arbitrate and/or Attend Mediation Proceedings," executed and filed by Graham in response to the first request. While it is true that the second type of form includes the phrase "agreement to arbitrate" in its title, First Weber states only that Graham "reaffirmed" his duty to arbitrate when he used the response form to consent to arbitration. The amicus curiae brief of the Wisconsin Realtors Association takes the position that, in the request and response forms "each party" "reconfirms" his or her "membership agreement to arbitrate." Our only further observation on this topic is to note that, as summarized above, this "reaffirmation" or "reconfirmation" explicitly highlighted the 180–day time limitation and did not include any language regarding who is to interpret that time limitation.

tion of REALTORS," the correct title of which was apparently the "Code of Ethics and Arbitration Manual." As referenced above, the Manual included multiple references to arbitration, at least some of which were submitted to Judge Colás and are now part of the record. Having provided this background, we will use the phrase "agreement to arbitrate" to indicate the application form, incorporating by reference the Manual and its references to arbitration, at least portions of which were submitted to Judge Colás.[9]

¶ 32.   Graham may intend to make the argument that there is not a construction of the agreement to arbitrate that would on its face require arbitration of the fees-and-costs dispute, because there was no dispute left to resolve once Graham tendered to First Weber what he deems to have been "full and final satisfaction of all claims" made in the action before Judge Albert, in compliance with Judge Albert's order of October 14, 2011. As described above, on that day Judge Albert confirmed the arbitration award, without awarding fees and costs, and gave Graham thirty days to pay.

¶ 33.   However, given our conclusion regarding the arbitrability question, we need not and do not address an argument to this effect. We assume without deciding that there is a construction of the agreement

---

[9] First Weber fails to establish that all pertinent portions of the correct version of the Manual, that is, all portions referring to arbitration at the time Graham applied to the Association, were presented to the circuit court. Thus, it is not clear that all potentially pertinent terms of the agreement to arbitrate were before the circuit court. Indeed, we note that at least some references to arbitration have clearly been omitted from the portions submitted by the parties. While this failure might provide an independent basis to affirm the circuit court, we do not rest our decision on it.

to arbitrate that would, on its face, require arbitration of the fees-and-costs dispute, so long as the 180–day time limitation is not an impediment.

¶ 34. There is no reasonable dispute that the agreement to arbitrate, as we have defined that term, includes the 180–day limitation period. Thus, while Graham obligated himself under the agreement to arbitrate to assume the "duty and privilege" of submitting to arbitration before the Association on a broad range of disputes that he might face in the course of his professional affairs, this duty did not attach if the request for arbitration was not filed within 180 days "after the facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence."

¶ 35. Turning to the question of whether a court should address the time limitation issue contained in the agreement to arbitrate, First Weber does not argue that the parties provided in clear and unmistakable terms in the agreement to arbitrate that any issue regarding the time limitation should be decided in the arbitration process. We conclude that this failure is dispositive. First Weber fails to point to any provision in the agreement to arbitrate that contains "the 'standard' provision subjecting to arbitration any dispute as to the meaning, interpretation and application" of the agreement to arbitrate. *See Joint Sch. Dist. No. 10*, 78 Wis. 2d at 104. As this court pointed out in *Kimberly Area School District*, in order to be "clea[r] and unmistakabl[e]," any such provision would need to include language stating that the arbitrator's decision regarding the scope of its authority is " 'final and binding.' "

508

222 Wis. 2d at 41 (quoting *Glendale Prof. Policemen's Ass' n v. City of Glendale*, 83 Wis. 2d 90, 99–100, 264 N.W.2d 594 (1978)).

¶ 36. We now explain why we reject the various arguments made by First Weber on this issue, which primarily run as follows:

- The time limitation is an Association rule related to the conduct of arbitrations and is not part of Graham's agreement to arbitrate.

- Courts are strictly prohibited from deciding any rule related to the arbitration process, including any "defenses" to arbitration such as a time limitation.

¶ 37. As to the first point, we conclude that if there was an agreement to arbitrate here, then it included the time limitation. To the extent that some of First Weber's arguments seem implicitly to treat the application form Graham signed and filed as constituting the entire agreement to arbitrate, this would be a concession that there was no agreement to arbitrate at all, since the form does not on its face refer to the topic. The Association did not employ a standard arbitration clause and First Weber submitted only portions of the Manual to the circuit court. We must construe the agreement to arbitrate as it was presented to the circuit court.

¶ 38. Turning to the second point, First Weber argues that the circuit court's decision fatally ignores the distinction between questions of "substantive arbitrability," which are decided by courts, and those of "procedural arbitrability," decided by arbitrators. *See Kimberly Area Sch. Dist.*, 222 Wis. 2d at 38 ("The question of 'substantive arbitrability,' that is, whether

509

the parties agreed to submit an issue to arbitration, is a question of law for the courts to decide.") (quoted source omitted).

¶ 39.    First Weber's argument relies primarily on *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). However, *Howsam* is distinguishable on its facts. In *Howsam*, a brokerage firm and its client, Howsam, entered into a Client Service Agreement that contained an arbitration clause, which provided in pertinent part:

> [A]ll controversies . . . concerning or arising from . . . any account . . ., any transaction . . ., or . . . the construction, performance or breach of . . . any . . . agreement between us . . . shall be determined by arbitration before any self-regulatory organization or exchange of which [the brokerage firm] is a member.

*Id.* at 81. This was the agreement to arbitrate. This agreement also included a provision allowing Howsam to select the arbitration forum. *Id.* at 82.

¶ 40.    Later, after having decided to pursue a grievance, Howsam selected a particular association to conduct the arbitration. This required Howsam to sign a separate, second agreement with the association, under which Howsam agreed that the association's "code of arbitration procedure" would apply. *Id.* This second agreement, under which Howsam selected a particular arbitration process, focused on the question of how the particular grievance Howsam wanted to raise would be arbitrated.

¶ 41.    One provision in the code of the association that Howsam selected provided that no dispute would be "eligible for submission" more than six years after the occurrence giving rise to the dispute. *Id.* Thus, the six-year limitations period of the association in

*Howsam* arose only in the context of Howsam's selection of the particular association, at which time she accepted the association's rules and its rule interpretation authority.

¶ 42. The brokerage sought an injunction in federal court to prohibit Howsam from proceeding in arbitration on the grounds that the dispute was not "eligible for submission" because it was more than six years old. *Id.* The supreme court ruled for the brokerage, holding that the application of the six-year limitation under the arbitration rules of the association selected by Howsam in the second agreement was an issue of procedural arbitrability for the arbitrator, rather than a question of substantive arbitrability for the judge. *Id.* at 83–85.

¶ 43. As explained above, unlike in *Howsam*, Graham here was presented with the time limitation as part of the agreement to arbitrate. We are not faced, as in *Howsam*, with interpretation of a procedural rule of arbitrators that took effect as part of the arbitration process. The question here is whether the agreement to arbitrate expired by its explicit terms. This is a question that goes to the existence of an agreement to arbitrate in the first place. Thus it is an issue of substantive arbitrability reserved for judicial determination.[10]

---

[10] First Weber also cites *Lumbermens Mutual Casualty Co. v. Broadspire Management Services, Inc.*, 623 F.3d 476, 480 (7th Cir. 2010), but without acknowledging the highly distinguishable facts of that case. In *Lumbermens*, a purchase agreement contained provisions under which the seller had to send the buyer a "Disagreement Notice" if the seller disagreed with the buyer's determinations of payments due each year. *Id.* at 478. Also pursuant to this purchase agreement, disputes about the seller's notices were to be arbitrated by an accounting or appraisal firm. *Id.* The buyer disputed the sufficiency of notices, such as that they lacked "reasonable detail." *Id.* at 479. At issue

¶ 44. The question in the instant case, distinguishable from that in *Howsam*, is whether First Weber can point to clear and unmistakable language in *the agreement to arbitrate* that the parties were leaving it to the arbitration process to determine whether the 180–day limitation bars arbitration. And, as discussed above, First Weber fails to point to an explicit grant of authority in the agreement to arbitrate under which arbitrators are to decide this question of arbitrability.

¶ 45. First Weber makes an additional argument, relying in part on *Baldwin-Woodville Area School District v. West Central Education Ass'n–Baldwin Woodville Unit*, 2009 WI 51, 317 Wis. 2d 691, 766 N.W.2d 591, to support its assertion that the arbitration process, and not the court, should have decided the timing issue. However, reliance on *Baldwin-Woodville* only serves to highlight First Weber's failure to squarely address the significance of the fact that the time limitation is contained within the agreement to arbitrate, without any explicit statement that this topic is committed to arbitral review. The court in *Baldwin-Woodville* upheld an award of an arbitrator based on the arbitrator's construction of a time limitation contained in a collective bargaining agreement, concluding that the construction "had a foundation in reason, it was not a perverse misconstruction." *Id.*, ¶¶ 2, 38. This was an application of the settled law that courts vacate arbitration awards only when "arbitrators exceeded their

was a district court's decision that the matters in dispute were within the "purview" and "competence" of the accounting or appraisal firm the parties had agreed would arbitrate disputes regarding the notices. *Id.* The decision of the appellate court to affirm rested in part on the fact that "the determination being made is one within the particular expertise of the arbitrator, not a court." *Id.* at 481.

powers through 'perverse misconstruction,' positive misconduct, a manifest disregard of the law, or when the award is illegal or in violation of strong public policy." *Id.*, ¶ 21 (quoted source omitted). These concepts are not presented in this appeal because there is no arbitration award to review.

¶ 46.  Moreover, in *Baldwin-Woodville*, the dispute was whether the arbitrator's award rested on a correct interpretation of the time limit provision in the agreement to arbitrate. *Id.*, ¶¶ 28–35. The dispute was not, as here, over *who* should decide the time limitation issue in the first instance. The agreement to arbitrate in *Baldwin-Woodville* included a provision that the "function of the arbitrator shall be to provide an opinion as to the interpretation and application of specific terms of this Agreement." *Id.*, ¶ 4. First Weber fails to point to any such provision in the agreement to arbitrate here.

¶ 47.  We also agree with Graham that *Employers Insurance of Wausau v. Jackson*, 190 Wis. 2d 597, 616, 527 N.W.2d 681 (1995), appears to undermine First Weber's core argument that, as a blanket proposition, time limitations are procedural issues to be determined by arbitrators. In *Employers Insurance*, the circuit court confirmed the appointment of an arbitrator pursuant to the terms of an agreement to arbitrate after the parties reached a deadlock preventing arbitration. *Id.* at 602. The agreement to arbitrate in *Employers Insurance* provided in part that parties were to appoint arbitrators within a thirty-day time period, and the circuit court found that one party had failed to do so. *Id.* at 605–09. The supreme court affirmed the circuit court in part based on the terms of a statute not in play in the

instant case, namely, WIS. STAT. § 788.04, which addresses the selection of arbitrators. However, the court also stated the following:

> Lloyd's [the party opposing circuit court action,] contends that sec. 788.03, Stats.,[11] should be read narrowly to mean *that a circuit court may only address the issues of whether an arbitration agreement exists between the parties and whether a party has refused or neglected to proceed with arbitration.* Because it never disputed the fact that an arbitration agreement existed between the parties and because it never refused or neglected to proceed with arbitration, Lloyd's posits that the circuit court had no reason to become involved in the dispute. Consequently, Lloyd's argues that the issues concerning its compliance with the timeliness of its arbitrator designation, the qualifications of the arbitrator and whether the arbitrator was biased *should not have been addressed by the circuit court.* Lloyd's argument assumes too much. While there is no dispute that an arbitration agreement existed between the parties, the facts indicate, Lloyd's protestations to the contrary notwithstanding, that Lloyd's did refuse or neglect to proceed to arbitration in a timely manner . . . . *The arbitration agreement clearly states that Lloyd's party arbitrator was to be named within 30 days of its having received notice from Wausau.* Thus, even under Lloyd's narrow view of the reach of sec. 788.03, Stats., *the circuit court had the authority to step in and order that arbitration proceed according to the terms of the agreement because Lloyd's had either refused or neglected to appoint an arbitrator within the parameters of the agreement.*

---

[11] In *Employers Insurance*, 190 Wis. 2d at 616, the court addressed the 1995–96 version of WIS. STAT. § 788.03, the terms of which are identical to the 2011–12 version at issue in the instant case.

*Id.* at 614–15 (emphasis added) (footnote omitted). First Weber accurately points out that the context in *Employers Insurance* is different in several respects from the context of the instant appeal, including the court's reliance in *Employers Insurance* on § 788.04. Even so, however, *Employers Insurance* appears to undermine First Weber's position that circuit courts can never review the applicability of time limitations in connection with arbitrations, on the grounds that time limitations are by nature procedural and therefore arbitrable. The court treated the time limitation in the agreement to arbitrate as a proper subject for court review.[12]

¶ 48. In sum, assuming without deciding that there is a construction of the agreement to arbitrate that would, on its face, require arbitration of the fees-and-costs dispute, Graham undertook in the agreement to arbitrate an obligation to arbitrate only those disputes initiated within 180 days of closings or of the discovery of disputes with reasonable diligence, whichever came later. Because First Weber failed to point to clear and unmistakable language in the agreement to arbitrate showing that this issue was to be resolved in the arbitration process, the circuit court properly addressed the question of whether the fees and costs dispute here was subject to arbitration in light of the 180-day time limitation.

---

[12] First Weber also argues that the time limitation here involved "the potential merits of the underlying claim." This argument is presented in an entirely conclusory manner. Without question, when determining arbitrability, courts are to avoid ruling on the merits of arbitration claims. *See Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶¶ 13, 17, 322 Wis. 2d 238, 776 N.W.2d 272. However, we do not discern an additional legal argument by First Weber based on this rule that is not addressed and rejected above.

515

## II. THE CIRCUIT COURT'S DATE SELECTION
■

¶ 49.  Having resolved the issue of who decides questions about the 180–day time limitation, we now turn to the question of whether the court correctly determined that the dispute here is not subject to the agreement to arbitrate because First Weber waited too long to file for arbitration. First Weber's argument is that the court selected the wrong trigger date for application of the 180–day time limitation.

■
¶ 50.  Regarding the standard of review, Graham takes the position that the circuit court's determination of the trigger date involves fact finding and is therefore subject to review only for an erroneous exercise of discretion. First Weber takes no position on our standard of review. However, for the following reasons we would affirm the circuit court decision even under a de novo standard of review. While "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Cirilli*, 322 Wis. 2d 238, ¶ 14, First Weber fails to raise a doubt on the question of whether the arbitration here was sought outside of the 180–day period provided for in the agreement to arbitrate.

¶ 51.  As summarized above, in its October 2010 petition to confirm the arbitration award, First Weber requested an award of attorney's fees and costs. On March 10, 2011, Graham explained in a letter to the court his position, based on multiple rationales, that First Weber's "demand for costs and fees in this action is improper." On March 16, 2011, the court issued a decision and order denying the request for fees and costs, which was followed that same month with ex-

tended briefing by First Weber in support of its motion for reconsideration of this fees and costs decision.

¶ 52.   Thus, no later than March 16, 2011, Graham had made an unambiguous claim to the court, known to First Weber, that he would not pay the costs and fees that had been clearly requested by First Weber unless compelled to do so in some manner, and the court had made an unambiguous determination consistent with this position. As First Weber's extended motion for reconsideration on this issue makes abundantly clear, there was no mistake by First Weber in March 2011, if not sooner, that Graham disputed the fees and costs issue.

¶ 53.   First Weber contends that March 10th could not be the trigger date because "no costs or fees had been submitted yet, and the costs and fees that would be at issue were still accruing" in March 2011. However First Weber fails to develop this assertion into a legal argument with supporting authority. The language of the agreement to arbitrate ("facts constituting the arbitrable matter could have been known in the exercise of reasonable diligence") does not by its terms call for a to-the-penny accounting of an arbitrable matter. The clear import of Graham's letter was that he was taking a position that he should not have to pay any fees. His objections were not to any particular element or the precise amounts claimed by First Weber, but instead to the court's ability to award First Weber any fees and costs at all. The precise amounts of the elements of any award that might eventually "accrue" were not relevant to Graham's arguments or to the circuit court's ultimate decision on this issue. The circuit court expressed no doubt or confusion as to what First Weber was seeking and what Graham was resisting.

¶ 54. In a related vein, First Weber focuses on the phrase "and enforcement" used in the "Response and Agreement to Arbitrate and/or Attend Mediation Proceedings," which, as described above, Graham signed in 2009:

> In the event I do not comply with the arbitration award and it is necessary for any party to this arbitration to obtain judicial confirmation *and enforcement* of the arbitration award against me, I agree to pay the party obtaining such confirmation the costs and reasonable attorney's fees incurred in obtaining such confirmation *and enforcement.*

(Emphasis added.) First Weber argues that "enforcement" was not "achieved" until the court issued its decision and order on December 5, 2011. Again, First Weber fails to fully develop a legal argument here. It is not clear what pertinent meaning First Weber asks us to attribute to the word "enforcement" or what it means to argue now by using the term "achieved." Even on December 5, 2011, after months of dispute between the parties, the circuit court continued to express the view that it lacked authority to award fees and costs. First Weber cites to secondary authorities on the concepts of conditions precedent and accrual of actions, but fails to tie these concepts in a persuasive manner to the terms of WIS. STAT. § 788.03 or pertinent case law.

¶ 55. First Weber argues that the court erred in upsetting the result of the Association process, which apparently deemed the time limitation not to be a bar to arbitration. In making this argument, First Weber cites to legal standards addressing court review of arbitration decisions. However, First Weber fails to explain why we should give this concept any weight in deciding the arbitrability issue under WIS. STAT. § 788.03, under the standards discussed in the first section of this

opinion and, in particular, in light of our discussion of *Baldwin-Woodville*. As explained above, First Weber conflates the issue of arbitrability with the issue of limited court review of an arbitration decision that arbitrators could make because it was rendered on a topic that came within the scope of an agreement to arbitrate. In sum, we cannot discern an additional legal argument regarding the time limitation determination based on First Weber's contention that the circuit purportedly "re-decided" an issue decided through the arbitration process.[13]

## CONCLUSION

¶ 56.   For these reasons, we affirm the circuit court order denying First Weber's petition to compel arbitration.

*By the Court.*—Order affirmed.

![ ]

---

[13] Graham makes additional arguments in support of the circuit court's denial of First Weber's request to compel arbitration, but we need not address those in light of our decisions explained above.

Separately, First Weber repeatedly implies that Graham may have forfeited or waived an objection to arbitration based on the 180–day time limitation, or that the circuit court overreached on behalf of Graham on this topic. However, First Weber fails to:   (1) demonstrate that it presented the circuit court with a basis to conclude that Graham forfeited or waived any argument material to the challenged decisions of the circuit court; (2) develop on appeal specific legal arguments establishing forfeiture or waiver supported by authority; and (3) explain how these lines of argument are different from its express argument, rejected above, that it was for the Association not the court to address the 180–day time limitation. Therefore we do not address these topics further.