Filed 2/16/22  Lopez v. Fountain View Subacute and Nursing Center CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHELLE LOPEZ, | B309714 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV17276) |
| v. | |
| FOUNTAIN VIEW SUBACUTE AND NURSING CENTER, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Reversed and remanded.

Littler Mendelson, Curtis A. Graham, Anthony G. Ly and Melanie H. Rollins for Defendants and Appellants.

Jonny Law, Jonathan Roven and Britanie A. Martinez for Plaintiff and Respondent.

Defendants and appellants Fountain View Subacute and Nursing Center, LLC (Fountain View), Genesis Healthcare LLC, New Generation Health, LLC, and Christina Urbina (collectively, defendants) appeal the trial court's denial of their motion to compel arbitration of employment related claims asserted by plaintiff and respondent Michelle Lopez (plaintiff) in an action she filed against defendants. The trial court denied defendants' motion on the ground that the parties' arbitration agreement required mediation of the dispute as a precondition to arbitration and that defendants could not waive that condition on plaintiff's behalf. Defendants contend issues concerning waiver of the right to arbitrate, interpretation, breach, or enforcement of the arbitration agreement, and the scope of any arbitrable issues must be decided by the arbitrator, and not the trial court, under the terms of the parties' agreement. We agree and reverse the order denying the motion to compel arbitration.

## BACKGROUND

**Fountain View's employment dispute resolution program**

Fountain View hired plaintiff on August 30, 2009. On August 28 and August 30, 2009, plaintiff acknowledged in writing that she received a copy of Fountain View's Employment Dispute Resolution (EDR) book. The EDR book describes and explains Fountain View's EDR program for resolving covered disputes. Disputes covered under the EDR program include all employment-related disputes, including claims related to discipline, discrimination, fair treatment, harassment, and termination.[1] The EDR program consists of four steps: (1)

---

[1] Disputes concerning worker's compensation, unemployment benefits, health, welfare and retirement benefits,

2

informal attempts to resolve the dispute by the employee and the employee's supervisor; (2) informal attempts at resolution by the employee and a human resources director; (3) mediation; and (4) arbitration.

Plaintiff was provided with an updated version of Fountain View's EDR book in June 2012. The updated EDR book, like the previous version, explains the four steps of Fountain View's EDR program. Both the previous and updated versions of the EDR book contain the following advisement concerning step 3—mediation:

> "You are not bound by the outcome of the mediation; however, in most cases, it is a required step in the EDR Program. The EDR Program Administrator has the discretion of allowing you in some circumstances to move to Step Four without taking advantage of the Mediation Step."

The updated EDR book states that the EDR program is governed by the Federal Arbitration Act (FAA): "[T]he Federal Arbitration Act covers the application, interpretation and enforcement of the EDR Program itself. If any court should find that the Federal Arbitration Act does not apply to the arbitration of a particular dispute then the law of the state in which you work will cover the application, interpretation and enforcement of the EDR Program."[2]

---

and claims for injunctive relief to protect trade secrets and confidential information are not covered under the EDR program.

[2] The previous version of the EDR book contains similar language: "The Federal Arbitration Act covers the application, interpretation and enforcement of the EDR Program. If any court should find that the Federal Arbitration Act does not apply to the arbitration of your dispute with the Company then the law

Both versions of the EDR book also state that the arbitration shall be governed by the rules of the American Arbitration Association (AAA).  The updated 2012 EDR book states in relevant part:

> "Although arbitration is somewhat less formal than going to court, it is governed by the established rules of the EDR Program, which adopts and incorporates the employment arbitration rules of the AAA (or other arbitration rules of the AAA that the arbitrator determines are applicable based on the nature of the particular dispute) as in effect at the time the dispute is referred to the arbitrator.  You may request a free copy of the current rules by emailing hr@skilledhc.com, or they are also available free of charge on the AAA's website at www.adr.org."

As relevant here, rule 6 of the AAA rules in effect at the time plaintiff filed this action states:

> "6.  Jurisdiction
>
> "a.     The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> "b.     The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.  Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract.  A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

---

of the state in which you work shall cover the application, interpretation and enforcement of the EDR Program."

4

"c.     A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection.  The arbitrator may rule on such objections as a preliminary matter or as part of the award."

Plaintiff signed two separate dispute resolution agreements, one on October 28, 2009 (the 2009 arbitration agreement), and one on June 12, 2012 (the 2012 arbitration agreement), in which she agreed to binding arbitration of employment-related disputes and to forego her right to a jury trial.  The 2012 arbitration agreement states in relevant part: ". . . I agree to be bound by the EDR Program, including having covered work-related disputes decided through arbitration and the other processes provided in the EDR Program rather than in court. . . .  I understand that by agreeing to be bound by the EDR Program, I am waiving the right to a trial by jury and to participate in a class or collective action."[3]

---

[3]     The 2009 arbitration agreement contains similar language: "I understand and agree that the last step of the EDR Program is final and binding arbitration by a neutral arbitrator.  I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Company and I are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trail [*sic*].  I further understand and agree that if I file a lawsuit regarding a dispute arising out of or relating to my application for employment, my employment or the termination of my employment, the Company may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use the EDR Program instead."

**Plaintiff's lawsuit and defendants' motion to compel arbitration**

Plaintiff filed this action on May 6, 2020, alleging claims against defendants for (1) failure to pay wages and overtime, provide meal and rest periods, issue accurate itemized wage statements, and provide personnel files; (2) unlawful business practices; (3) retaliation; (4) wrongful termination in violation of public policy; and (5) violation of Labor Code section 1102.5. Defendants issued a demand for arbitration, but plaintiff refused to arbitrate her claims.

Defendants moved to compel arbitration of plaintiff's claims on July 1, 2020. Attached as an exhibit to defendants' motion was correspondence from plaintiff's counsel claiming that defendants had breached the arbitration agreement by bypassing step three (mediation) of the EDR program—a required step prior to arbitration: "It appears as though by Defendants moving for arbitration, they are breaching their agreement under the program, which would invalidate the agreement. There is a 4-step program, which includes that Defendants pay for a mediation. Defendant breached the agreement by demanding arbitration prior to mediation. Also Defendants cannot demand arbitration until they have mediated the claim."

Also attached as an exhibit to the motion was a declaration by Fountain View's EDR program administrator, Lila Ann Mikhail, stating that defendants had "waived Plaintiff's obligation to participate in Step 3 in the EDR Program, which requires the parties to participate

6

in mediation before proceeding to Step 4, requiring the dispute to be resolved by a neutral arbitrator."

Plaintiff opposed the motion, arguing that the 2009 arbitration agreement was procedurally unconscionable because it was required as condition of her employment. Plaintiff further argued that the 2012 arbitration agreement was illusory because it allowed Fountain Valley to modify its terms unilaterally.[4]

At the hearing on the motion to compel arbitration, the trial court stated that "[t]he signed documents provided to the court indicated that arbitration is . . . step four in the ADR process. Then the review of the long form

_____

[4]     The provision in the 2012 agreement allowing modification states: "The EDR Program may be modified at any time by the EDR Program Administrator with 30 days prior notice to you, including by a general notice distributed or conspicuously posted in the employee break room or another common area at your workplace. Copies of the EDR Program, as so modified, will be available to you upon request by emailing hr@skilledhc.com. Unless during the 30 day notice period you object to the EDR Program, as so modified, by delivering written notice of your objection to your Human Resources Director, the EDR Program as so modified will be effective beginning at the end of the notice period or as of a later date specified in the notice, if applicable. In no event, however, will the modifications in the EDR Program be effective as to disputes for which a proceeding has already been initiated under the EDR Program. If you deliver a timely objection to the EDR Program as so modified, the EDR Program in the form you previously agreed to will remain in effect as to you unless and until you later agree to the modified EDR Program. Your objection to the modified EDR Program will not change the at-will nature of your employment."

7

document showed that the prior step is mediation."  The court noted that there was correspondence from plaintiff's counsel to defendants' counsel "reminding the defense of this prior step . . . .  The defendant declarant says she has waived Plaintiff's requirement to mediate and that was confusing to the court."

Defendants argued in response that the arbitration agreements expressly allowed defendants to waive the mediation step and to proceed directly to arbitration.  Defendants further argued that plaintiff had not raised any argument concerning mediation as a prerequisite to arbitration in her opposition to defendants' motion.

The trial court denied the motion to compel arbitration, concluding that the parties' arbitration agreement specified that mediation was a prerequisite to arbitration and that defendants could not waive mediation on plaintiff's behalf.  The court set a trial date of January 31, 2022.  This appeal followed.

## DISCUSSION

### I.  Standard of review

The parties do not dispute that the FAA governs their arbitration agreement.  They disagree on the proper standard of review.  Defendants contend de novo review applies because the material facts are undisputed.  Plaintiff claims the trial court's factual finding of waiver should be reviewed under the clearly erroneous standard.  It is well settled that we review de novo the legal question whether the FAA required the trial court to grant defendants' motion to compel arbitration.  (*California Teachers Assn. v.*

8

*San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699; *Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 959.)

## II.    Arbitrability

Defendants contend the trial court exceeded its authority by deciding that mediation was a condition precedent to arbitration and that defendants could not waive that condition.  They argue that the arbitration agreements specify that the arbitrator, and not the trial court, must decide that issue, along with any other issues concerning arbitrability.

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83 (*Howsam*).)  The parties here clearly and unmistakably agreed to have an arbitrator determine questions of arbitrability.[5]  The arbitration agreements mandate

---

[5]    During oral argument, plaintiff's counsel claimed that the parties did not clearly and unmistakably incorporate the AAA rules into their arbitration agreement.  As support for this argument, counsel cited language in the 2012 EDR book pertaining to step three—mediation, allowing the EDR program administrator to select a mediator "through the American Arbitration Association (AAA), a similar nationally or regionally-recognized alternative dispute resolution firm or organization or by the EDR Program Administrator directly with a neutral party."  The language governing step four—arbitration, in contrast, clearly and unmistakable incorporates only the AAA arbitration rules.  It states:  "Although arbitration is somewhat less formal than going to court, it is governed by the established

9

arbitration in accordance with the AAA rules.  Rule 6 of those rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "the existence or validity of a contract of which an arbitration clause forms a part."  By incorporating rule 6 of the AAA rules into their agreement, the parties clearly and unmistakably delegated to the arbitrator the authority to determine issues concerning arbitrability.  (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1123 ["By incorporating [AAA rules] into their agreement, the parties clearly evidenced their intention to accord the arbitrator the authority to determine issues of arbitrability."]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 549, 557 [incorporation of AAA rules clear and unmistakable evidence of intent to delegate to arbitrator issues of arbitrability]; *Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125, 1130 ["'[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability'"].)

---

rules of the EDR Program, which adopts and incorporates the employment arbitration rules of the AAA (or other arbitration rules of the AAA that the arbitrator determines are applicable based on the nature of the particular dispute) as in effect at the time the dispute is referred to the arbitrator."

## III. Mediation as a prerequisite to arbitration

Once it is determined that the parties have contractually agreed to arbitrate, questions concerning "procedural" preconditions to arbitration, such as "whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate" should be decided by the arbitrator. (*John Wiley & Sons v. Livingston* (1964) 376 U.S. 543, 557 (*Wiley*).) The United States Supreme Court has held, for example, that an arbitrator, and not the court, should decide whether a party's failure to follow the first two steps in a three-step grievance procedure in which arbitration was the third and final step precluded arbitration. (*Id.* at pp. 555-557.) The Supreme Court has consistently reaffirmed that arbitrators, and not courts, must decide whether a condition precedent to arbitrability has been fulfilled. (*BG Group PLC v. Republic of Argentina* (2014) 572 U.S. 25, 34-35 (*BG Group*); *Howsam, supra*, 537 U.S. at pp. 85-86.)[6] Whether mediation was a condition

---

[6] Federal appellate courts in the First and 11th Circuits have refused to compel arbitration when the party requesting arbitration failed to request mediation, when mediation was a condition precedent to arbitration. (See *HIM Portland LLC v. DeVito Builders, Inc.* (1st Cir. 2003) 317 F.3d 41, 44 [refusing to compel arbitration because "[u]nder the plain language of the contract, the arbitration provision of the agreement is not triggered until one of the parties requests mediation"]; *Kemiron Atlantic, Inc. v. Aguakem Internat. Inc.* (11th Cir. 2002) 290 F.3d 1287, 1291 [same].) The Fourth Circuit has declined to follow these cases, which predate and conflict with the Supreme Court's

precedent to arbitration, and whether plaintiff has no duty to arbitrate because defendants failed to seek mediation before moving to compel arbitration, are issues to be decided by the arbitrator, and not the trial court.

Assuming the arbitrator determines that mediation was a condition precedent to arbitration, whether defendants' failure to request mediation waived their right to compel arbitration must also be decided by the arbitrator, and not the trial court. (*Wiley, supra*, 376 U.S. at p. 557.) *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, which plaintiff cites as authority to the contrary, is inapposite. The arbitration agreement in that case did not contain a delegation provision, nor did it involve application of the FAA.

## IV.  Validity and enforceability of arbitration agreement

In opposition to defendants' motion to compel arbitration, plaintiff challenged the validity of the arbitration agreements as a whole. Plaintiff did not, however, challenge the validity of the delegation provision, which empowers the arbitrator to rule on "the existence, scope or validity of the arbitration agreement." Because plaintiff did not challenge the delegation provision specifically, the enforceability of the arbitration agreement as a whole must be decided by the arbitrator. (*Rent-A-*

---

decisions in *BG Group, supra*, 572 U.S. 25 and *Howsam, supra*, 537 U.S. 79. (*Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.* (4th Cir. 2015) 807 F.3d 553, 565, fn. 14 [arbitrator, and not court, must decide whether party's failure to first seek mediation as a condition precedent to invoking arbitration provision forfeited right to arbitrate].) We find the Fourth Circuit's reasoning in *Chorley* to be persuasive.

12

*Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 75-76; *Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2018) 30 Cal.App.5th 970, 979.) "[A] party's challenge to the arbitration agreement [as a whole] does not invalidate the delegation clause, and therefore the arbitrator, and not a court, must consider any challenge to the arbitration agreement as a whole." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 240.)

## DISPOSITION

The order denying the motion to compel arbitration is reversed. The matter is remanded to the trial court with directions to vacate its prior order denying defendants' motion to compel arbitration and to enter a new order granting the motion. Defendants are awarded their costs on appeal.

_____
CHAVEZ, J.

We concur:

_____
ASHMANN-GERST, Acting P. J.

_____
HOFFSTADT, J.

13